**Sheldon BARR, Plaintiff-Appellant,**

v.

**Robert ABRAMS, Orestes J. Mihaly, Mark A. Tepper, Rebecca Mullane, William Bottiglieri, and Janey Renee O'Connor, Defendants-Appellees.**

**No. 541, Docket 86–7757.**

United States Court of Appeals, Second Circuit.

Argued Dec. 10, 1986.
Decided Jan. 28, 1987.

Howard L. Jacobs, New York City, for plaintiff-appellant.

Frank J. Wenick, Asst. Atty. Gen., of New York (Robert Abrams, Atty. Gen., Lawrence S. Kahn, Deputy Sol. Gen., Christopher Keith Hall and Richard G. Liskov, Asst. Attys. Gen., of counsel), for defendants-appellees.

Before KAUFMAN, TIMBERS and MAHONEY, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

It is an indispensable foundation of our system of justice that no man, however exalted the position he holds, is above the law. At the same time, because public officials entrusted with discretionary responsibilities must have breathing space within which to perform their functions for the common good, doctrines of immunity protect them against many claims of wrongdoing. In this case, we find ourselves between these lofty principles, in a small clearing that has been left unilluminated.

Specifically, we are called upon to decide what, if any, degree of immunity should be enjoyed by state prosecutors who are charged with violating constitutional rights while proceeding in excess of their jurisdiction.

FACTS

In March, 1983, Assistant Attorneys General Orestes J. Mihaly, Mark A. Tepper, and Rebecca Mullane commenced an investigation pursuant to Article 23–A of the New York General Business Law into alleged violations of state securities laws. Subsequently, on April 10, 1984, the Attorney General's office moved *ex parte* for an order requiring fifty-nine persons, including Sheldon Barr, an attorney, to appear for an examination under oath and to produce papers, books and records pertaining to the offer and sale of equipment leasing tax shelters. On April 11, 1984, Supreme Court Justice Thomas J. Hughes granted the relief requested.

Barr refused to abide by the court's order to appear. Instead, on April 27, 1984, he moved the New York Supreme Court for an order vacating so much of the April 11, 1984 order as applied to him, on the ground that his testimony would not in any way be relevant to the investigation and taking it would thus be an unwarranted invasion into his affairs. On June 5, 1984, Justice Hughes denied the motion. On February 5, 1985, the Appellate Division, First Department, unanimously affirmed that decision, and on June 11, 1985, the New York Court of Appeals denied Barr's motion for leave to appeal.

On August 7, 1985, Barr appeared with counsel at the office of the Attorney General. At the commencment of the inquiry,

Assistant Attorney General Tepper advised Barr that he had the right to remain silent, that anything he said would be used against him, and that he could stop the examination at any time he wished not to answer a question. On the advice of his counsel, Barr then refused to produce any documents or answer any questions, invoking his fifth amendment privilege.

On August 14, 1985, Assistant Attorney General Tepper filed a criminal information charging Barr with criminal contempt in violation of Section 215.50 of the New York Penal Law for his failure to comply with Justice Hughes's order. On the basis of the information, Criminal Court Judge Murray Mogel signed an arrest warrant for Barr's apprehension. The same day, William Bottiglieri and Jane Renee O'Connor, investigators on the staff of the Attorney General, executed the warrant by arresting Barr at his office.

At the initial hearing following his arrest, Barr contended that the criminal charges had been filed for improper purposes and that the Attorney General had no authority to commence such a criminal proceeding. In addition, Barr argued that the contempt charges were without substance. On October 21, 1985, by order and opinion, Criminal Court Judge Max Sayah dismissed the information on the ground that Barr had a fifth amendment right to refuse to answer the questions posed by Assistant Attorney General Tepper and to produce the requested documents.

Following his vindication in the New York court, Barr filed an action under 42 U.S.C. §§ 1983 and 1985 against Attorney General Robert Abrams, Assistant Attorneys General Mihaly, Tepper and Mullane, and Investigators Bottiglieri and O'Connor. Claiming to have suffered financial, mental and physical harm, Barr sought compensatory damages of $30 million plus punitive damages of $30 million. Barr also sought to enjoin the prosecutors from utilizing any evidence obtained in violation of his constitutional rights.

Specifically, Barr alleged that the defendants had maliciously, without jurisdiction, and for the improper purpose of punishing him for exercising his fifth amendment rights, instigated criminal contempt proceedings against him and obtained an arrest warrant leading to his unlawful arrest. Barr further alleged that the prosecuting attorneys, acting in concert with their staff investigators, had unlawfully effected his arrest and imprisonment. Finally, Barr alleged that the prosecutors had threatened and harassed prospective witnesses, unlawfully seized property, submitted false statements to the courts, slandered Barr, and illegally conspired with the Internal Revenue Service.

On August 7, 1986, 641 F.Supp. 547, the district court granted the defendants' motion for summary judgment. In a comprehensive opinion, Judge Leval ruled that pursuant to *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), absolute immunity protected the prosecutors from a civil rights suit based on their actions in filing the criminal information and applying to the New York court for an arrest warrant. In any event, Judge Leval held, the prosecutors enjoyed qualified immunity for these actions pursuant to *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), because their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Judge Leval further decided that Barr's remaining claims were vague and conclusory and subject to dismissal for failure to state a cause of action, on the ground of prosecutorial immunity, or both. Finally, Judge Leval ruled that even if any of the claims surmounted all of these hurdles, Barr's action still would have to be dismissed or stayed based on the doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), which requires that a federal court ordinarily abstain from entertaining a lawsuit that interferes with a state's conduct of a criminal proceeding.

## DISCUSSION

### A

In *Imbler* the Supreme Court held that there is absolute immunity from § 1983 liability for those prosecutorial activities

"intimately associated with the judicial phase of the criminal process." *Imbler, supra*, 424 U.S. at 430, 96 S.Ct. at 995. In *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir.1981), adopting the *Imbler* holding, we stated that the protected "quasi-judicial" activities include the initiation of a prosecution and the presentation of the government's case. On the other hand, we pointed out where the prosecutors act in an "investigative" or "administrative" capacity, only qualified immunity operates. *Kavanagh, supra*, 640 F.2d at 452; *See also Powers v. Coe*, 728 F.2d 97, 103 (2d Cir. 1984).

Barr concedes that in filing the information charging him with contempt and in applying to the New York court for an arrest warrant based on that charge, the Attorney General and his deputy prosecutors were acting in their core court-related role within the meaning of *Imbler*. Barr seeks to avoid absolute immunity, however, by arguing that a prosecutor initiating a prosecution loses the protection of *Imbler* where state law did not empower the prosecutor to bring the charges.

The question thus raised was not specifically decided by the Supreme Court in *Imbler*. On the contrary, the court took pains in that case to note that the challenged acts of the state prosecutor were "within the scope of his duties." *Imbler*, 424 U.S. at 410, 420, 96 S.Ct. at 985, 990. Nor can we construe *Taylor* or *Powers* as foreclosing Barr's contention. For in those cases, we simply adopted and applied *Imbler*. *See Kavanagh, supra*, 640 F.2d at 452, 453; *Coe, supra*, 728 F.2d at 103, 104.

We are persuaded, however, that a crabbed reading of *Imbler*, and a holding that a prosecutor is without absolute immunity the moment he strays beyond his jurisdictional limits, would do violence to its spirit. The purpose of the immunity rule is to give to public officials entrusted with sensitive tasks a protected area of discretion within which to carry out their responsibilities. Because we believe that the rule Barr proposes would "cause a deflection of the prosecutor's energies from his public

duties," *Imbler*, 424 U.S. at 423, 96 S.Ct. at 991, and force him to "shade his decisions instead of exercising the independence of judgment required by his public trust," *Imbler*, 424 U.S. at 423, 96 S.Ct. at 991, we reject it.

It does not follow that the issue whether a prosecutor is acting within his jurisdiction has no relevance to the type of immunity he enjoys. In *Stump v. Sparkman*, 435 U.S. 349, 356, 98 S.Ct. 1099, 1104, 55 L.Ed.2d 331 (1978), the Supreme Court stated that judges are absolutely immune from § 1983 actions only for judicial acts for which they have at least a semblance of jurisdiction. Where a judge proceeded in "the clear absence of all jurisdiction," the Court ruled, a different result would be in order.

We believe the same rule should apply here. Since it is well settled that the immunity of prosecutors is based on the same considerations that underlie the immunity of judges, *Imbler*, 424 U.S. at 422, 96 S.Ct. at 991, and since there is no functional basis for according a greater degree of protection to prosecutors than to judges, a dissimilar standard would be incongruous. *See Lerwill v. Joslin*, 712 F.2d 435, 438 (10th Cir.1983).

Thus, unless a prosecutor proceeds in the clear absence of all jurisdiction, absolute immunity exists for those prosecutorial activities intimately associated with the judicial phase of the criminal process. Conversely, where a prosecutor acts without any colorable claim of authority, he loses the absolute immunity he would otherwise enjoy. In such a case, however, he remains protected by the shield of qualified immunity recognized by *Harlow*.[1]

Here, we are convinced that Barr fails to meet the threshold test required to overcome the bar of absolute immunity: a showing that the state prosecutors proceeded against him in the clear absence of jurisdiction. Section 358 of New York's General Business Law empowers the Attorney General to "prosecute every person charged with the commission of a criminal

---

1. The difference between the two forms of immunity in these contexts has been helpfully ex-

offense in violation of the laws of this state, applicable to or in respect of the practices or transactions which in this article are referred to as fraudulent practices." The contempt information was founded on § 215.50(3) of the New York Penal Law, which authorizes prosecution for contempt for "intentional disobedience or resistance to the lawful process or other mandate of a court."

In dismissing the criminal charge against Barr, Judge Sayah explicitly ruled that

> contempt, if properly charged, in the context of the facts of this case is an underlying act of continuous concealment directly related to the securities fraud investigation, and therefore is within the jurisdiction of the Attorney General.

*People v. Barr,* No. 5N071972, slip op. at 12 (N.Y.Crim.Ct., Oct. 21, 1985). Without expressing any view as to whether this ruling would have been sustained by the New York Court of Appeals, we believe that Barr has failed to demonstrate that Judge Sayah's decision was unequivocally erroneous. *See People v. Tomasello,* 21 N.Y.2d 143, 151, 287 N.Y.S.2d 1, 6–7, 234 N.E.2d 190, 194 (1967); *People v. Stern,* 86 Misc.2d 101, 103, 381 N.Y.S.2d 951, 953 (Sup.Ct.N.Y.Co.1976); *People v. Sommer,* 77 Misc.2d 840, 846–47, 353 N.Y.S.2d 892, 898–99 (Co.Ct.Nassau Co.1974). Accordingly, we conclude that the state prosecutors are immune from suit based on their actions in filing the criminal information and procuring Barr's arrest warrant.

### B

Barr further charges that the Assistant Attorneys General instructed and acted in concert with Investigators Bottiglieri and O'Connor to effect his arrest and imprisonment pursuant to a warrant which was found to have been obtained without probable cause. Barr insists that in this activity the prosecutors were acting beyond their role in initiating a prosecution and therefore are not protected by absolute immunity. Barr further contends that the prosecutors do not have *Harlow* immunity for

this conduct, because they knowingly violated clearly established constitutional rights.

The distinction Barr urges between filing the criminal information and procuring an arrest warrant, on the one hand, and executing the arrest warrant, on the other, is meaningful, and generally would carry the prosecutors out of the realm of *Imbler* and into *Harlow*. In this case, however, Barr's complaint does not in fact challenge the latter type of conduct on the part of the prosecutors. Barr does not allege any impropriety in the manner in which he was arrested. Rather, he merely attempts to recharacterize his claim that the decision to charge and arrest him was malicious and unlawful. As we have already explained, the prosecutors are shielded from these allegations by the absolute immunity of *Imbler*.

The investigators are also immune. As Judge Leval ruled, Bottiglieri and O'Connor were empowered as "police officers" under New York Criminal Procedure Law §§ 1.20(32) and 1.20(34)(g) and acted pursuant to a court-issued arrest warrant which was facially valid. Thus, their actions are protected by *Harlow* immunity.

*Malley v. Briggs,* —— U.S. ——, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), does not require a different result. In that case, the Supreme Court held that, notwithstanding an intervening judicial order approving the arrest warrant, police officers could not avail themselves of immunity where they procured the warrant based on facts that they must have known would not justify it. Here, the investigators did not apply for the warrant but simply executed it in a concededly proper manner.

### C

◼ Finally, Barr charges that the Assistant Attorneys General violated his rights in that they threatened witnesses, unlawfully seized property, submitted false statements to courts, told persons that he had engaged in fraud and sham, and il-

plicated by the United States Court of Appeals for the 10th Circuit in *Lerwill v. Joslin,* 712 F.2d

435, 440–41 n. 7 (10th Cir.1983).

legally conspired with the Internal Revenue Service. These claims were properly dismissed for vagueness. As we have repeatedly held, complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning. *See Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977); *Koch v. Yunich,* 533 F.2d 80, 85 (2d Cir.1976); *Powell v. Jarvis,* 460 F.2d 551, 553 (2d Cir.1972). Accordingly, we need not reach any of the alternative grounds relied on by the district court in rejecting these claims.

## CONCLUSION

Having determined that each of the charges raised by Barr's complaint was properly dismissed, we affirm the judgment of the district court.