**Lois SCHLOSS and Osmond Benschop, Plaintiffs–Appellants,**

**v.**

**Patrolman BOUSE, Individually and as a Police Officer of the Village of Catskill, Patrolman Wadhenolo, Individually and as a Police Officer of the Village of Catskill, Patrolman Adsit, Individually and as a Police Officer of the Village of Catskill, Seymour Meadow, Individually and as District Attorney of Greene County, Daniel Lalor, Individually and as Assistant District Attorney of Greene County, the Village of Catskill Police Department, the City of Hudson Police Department, Det. Sgt. Julius Brenner, Individually and as an Officer of the City of Hudson Police Department, Officer Joel Hollenbeck, Individually and as an Officer of the City of Hudson Police Department, Officer Gary Wallace, Individually and as an Officer of the City of Hudson Police Department, Officer Frank Abitabile, Individually and as an Officer of the City of Hudson Police Department, the City of Hudson and Bertha Heath, Defendants–Appellees.**

**No. 755, Docket 88–7925.**

United States Court of Appeals, Second Circuit.

Argued Feb. 6, 1989.

Decided May 30, 1989.

Gary Greenwald, Wurtsboro, N.Y., for plaintiffs-appellants.

Michael J. Hutter, Albany, N.Y. (Thuillez, Ford, Gold, Conolly & Kelly, Albany, N.Y., on the brief), for defendant-appellee Lalor.

Before KEARSE and WINTER, Circuit Judges, and LEVAL, District Judge.*

* Honorable Pierre N. Leval, Judge of the United States District Court for the Southern District of New York, sitting by designation.

KEARSE, Circuit Judge:

Plaintiffs Lois Schloss and Osmond Benschop appeal from a final judgment of the United States District Court for the Northern District of New York, Lee P. Gagliardi, *Judge*, dismissing their suit seeking damages from various defendants under 42 U.S.C. § 1983 (1982) in connection with an allegedly unlawful arrest and detention. On appeal, plaintiffs challenge only so much of the judgment as reflects a prior order of the district court, Con. G. Cholakis, *Judge*, granting the motion of defendant Daniel Lalor, an assistant district attorney for Greene County, New York, for summary judgment dismissing plaintiffs' claim against him on the ground of absolute immunity. Plaintiffs claimed that Lalor had prolonged their detention and threatened to prosecute them solely for the purpose of coercing them to execute releases in favor of the arresting authorities, and they contend on appeal that the court erred in dismissing this claim on the ground of absolute immunity because these are not prosecutorial functions. For the reasons below, we affirm the judgment of the district court.

## I. BACKGROUND

For the purposes of his motion for summary judgment, Lalor did not dispute plaintiffs' version of the events leading to their lawsuit. Plaintiffs' version, together with facts they have not contested, is as follows.

On March 12, 1984, a woman in the Village of Catskill, New York, complained to Catskill police that a man and a woman had attempted to rob her at gunpoint on the main street of Catskill and had entered a vehicle and left the area. The complainant furnished the police with a detailed and accurate description of plaintiffs' car, including the number on the license plate. Catskill police radioed that information to neighboring communities including the City of Hudson, New York.

A short time later, as plaintiffs were driving from Catskill toward Hudson, they

were stopped by Hudson police officers. Plaintiffs were arrested and turned over to the Catskill police. A search failed to reveal any weapon.

Plaintiffs repeatedly protested their innocence, and upon learning the identity of the complainant, they informed the Catskill police that she had a history of mental illness and a reputation for fabricating stories. At some point, it became apparent to the police officers that in fact plaintiffs had committed no crime and that no crime had been committed. Eventually, the officers took plaintiffs to the office of assistant district attorney Lalor.

In Lalor's office, plaintiffs were asked to sign releases in favor of the various police agencies and municipalities. Both Lalor and the officers threatened that if plaintiffs refused to sign the releases, they would not be released from custody but instead would be taken to the county jail and prosecuted on criminal charges. Plaintiffs signed the releases.

Plaintiffs commenced the present action seeking damages from, *inter alios,* the arresting officers and the municipalities in July 1984; originally the district attorney, rather than Lalor, was made a party; Lalor was added as a defendant in December 1985. Though Lalor disputed plaintiffs' version of the events in which he was involved, he moved for summary judgment contending that he was entitled to absolute prosecutorial immunity even assuming plaintiffs' version was accurate.

In December 1987, the district court granted Lalor's motion from the bench, ruling that "the action performed by assistant District Attorney Lalor was performed within the function of Mr. Lalor's prosecutorial aspect of his responsibility and therefore comes within the immunity provided to him by law." Eventually, a final judgment was entered after all of the defendants either had had the claims against them dismissed or had entered into settlement agreements. This appeal followed.

## II. DISCUSSION

■ On appeal, Schloss and Benschop contend principally that the district court

should have rejected Lalor's absolute immunity defense as a matter of law because coercion of releases is not the type of conduct to which such immunity is accorded. In the context of the present case, we conclude that Lalor was entitled to absolute immunity.

Preliminarily we note that there was no issue of fact to be decided with respect to the defense of absolute immunity, *see* Fed. R.Civ.P. 56(c), since Lalor conceded, for the purposes of his motion, all of the factual claims made by plaintiffs in their affidavits. Though he formally and in deposition testimony denied certain of plaintiffs' allegations, those denials do not appear to have been taken into account by the district court. Nor do we consider them; our analysis of Lalor's absolute immunity defense proceeds on the assumption that plaintiffs' version of the events is true.

■ We begin with the general principles governing immunity for prosecutors. It is well "established that prosecutors have absolute immunity for some of their acts but only qualified immunity for others." *Lawson v. Abrams,* 863 F.2d 260, 262 (2d Cir.1988); *see, e.g., Robison v. Via,* 821 F.2d 913, 918–20 (2d Cir.1987); *Taylor v. Kavanagh,* 640 F.2d 450, 452 (2d Cir. 1981). Though, as discussed below, they enjoy at most a qualified immunity with respect to acts that are "administrative" or "investigative," *see id.* at 452–53, they enjoy absolute immunity with respect to actions "intimately associated with the judicial phase of the criminal process," *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976). Among the acts for which a prosecutor is absolutely immune is the initiation of a prosecution. *Id.* at 410, 424–25, 96 S.Ct. at 985, 992.

In *Imbler v. Pachtman,* the Supreme Court recognized a number of policy considerations warranting absolute immunity for a decision to prosecute. First, forcing a prosecutor to answer in a civil lawsuit for his decision to initiate and pursue a prosecution could skew his decisionmaking, tempting him to consider the personal ramifications of his decision rather than rest

that decision purely on appropriate concerns. *Id.* at 424–25, 96 S.Ct. at 992. Further, prosecutors haled into court to defend their decisions would, even if they prevailed on the merits, have had their energies diverted from their important duty of enforcing the criminal law. *Id.* at 425, 96 S.Ct. at 992. Lastly, because the prosecutor may be responsible annually for hundreds of indictments and trials, and because so many of these decisions to prosecute could engender colorable claims of constitutional deprivation, forcing him to defend these decisions could impose intolerable burdens. *Id.* at 425–26, 96 S.Ct. at 992–93. Thus, it has long been established that even where the prosecution has so little merit that a verdict is directed in favor of the defendant "upon the prosecution's evidence," *Gregoire v. Biddle*, 177 F.2d 579, 580 (2d Cir.1949), *cert. denied*, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950), the decision to prosecute is protected by absolute immunity. *Yaselli v. Goff*, 12 F.2d 396 (2d Cir.1926), *aff'd*, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927) (per curiam).

■ We think that, as a matter of logic, absolute immunity must also protect the prosecutor from damages suits based on his decision *not* to prosecute. *Cf., e.g., Dacey v. Dorsey*, 568 F.2d 275, 278 (2d Cir.) (United States Attorney who chose not to seek injunction under 42 U.S.C. § 1986 to restrain alleged civil rights violation was absolutely immune from damages suit by victim), *cert. denied*, 436 U.S. 906, 98 S.Ct. 2238, 56 L.Ed.2d 405 (1978). Though not all of the concerns discussed in *Imbler* indicate a need for absolute immunity with respect to a decision not to prosecute, many of the same factors may come into play. For example, the decision not to prosecute could expose the prosecutor to a suit by the complainant asserting that the complainant was denied the equal protection of the law. Further, absolute protection from a damages suit for not prosecuting is warranted simply because the decision with respect to any given charge is an either-or proposition. A decision to prosecute logically eliminates the nonprosecution option, and vice versa. If the prosecutor had absolute immunity only for the decision to prosecute and not for a decision not to prosecute, his judgment could be influenced in favor of a prosecution that sound and impersonal judgment would eschew. Thus, the contours of absolute prosecutorial immunity should be drawn to avoid skewing the prosecutor's judgment in either direction, both to eliminate the appearance that personal considerations may be a factor, *see, e.g., Imbler v. Pachtman*, 424 U.S. at 424–25, 96 S.Ct. at 992 ("[t]he public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages"), and to avoid establishing a doctrine that would "discourage prosecutors from dismissing meritless actions before trial, since only by pursuing ... charges would the prosecutor be fully immune," *Haynesworth v. Miller*, 820 F.2d 1245, 1270 n. 200 (D.C.Cir.1987).

The claimed wrong in the present case, of course, is not the decision to forgo prosecution but rather Lalor's demand, in exchange for that decision, that plaintiffs execute releases in favor of the policemen and the municipalities. Plaintiffs argue that this demand was an administrative act rather than a prosecutorial act and that Lalor hence can claim at most a qualified immunity. Though the principle is sound, it does not apply to the facts as set forth in plaintiffs' affidavits. This Court, like other circuits, has indeed held that a prosecutor does not enjoy absolute immunity for acts that are merely administrative rather than prosecutorial, *see, e.g., Lawson v. Abrams*, 863 F.2d at 263; *Lee v. Willins*, 617 F.2d 320, 321–22 (2d Cir.), *cert. denied*, 449 U.S. 861, 101 S.Ct. 165, 66 L.Ed.2d 78 (1980); *Dellums v. Powell*, 660 F.2d 802, 805 (D.C. Cir.1981); *Mancini v. Lester*, 630 F.2d 990, 992–93 (3d Cir.1980); *Jacobson v. Rose*, 592 F.2d 515, 524 (9th Cir.1978), *cert. denied*, 442 U.S. 930, 99 S.Ct. 2861, 61 L.Ed.2d 298 (1979), and the Supreme Court "at least implicitly has drawn the same distinction in extending absolute immunity to executive officials when they are engaged in quasi-prosecutorial functions. See *Butz v. Economou*, 438 U.S. [478, 515–17, 98 S.Ct.

2894, 2915–16, 57 L.Ed.2d 895 (1978) ]," *Harlow v. Fitzgerald,* 457 U.S. 800, 811 n. 16, 102 S.Ct. 2727, 2734 n. 16, 73 L.Ed.2d 396 (1982). *See also Forrester v. White,* 484 U.S. 219, 108 S.Ct. 538, 545, 98 L.Ed.2d 555 (1988) (judge does not have absolute immunity for administrative personnel decisions). We cannot conclude, however, that the conduct complained of here was sufficiently independent of the decision whether or not to prosecute to warrant characterizing the demand for releases as merely administrative. Though a different conclusion might be warranted if Lalor had done nothing more than prepare releases or had threatened to extend plaintiffs' detention without threatening to prosecute them, *cf. Lee v. Willins,* 617 F.2d at 322 ("a prosecutor might not enjoy absolute immunity from suit by a witness who was allegedly threatened and imprisoned to obtain his perjured testimony"), plaintiffs' description of the events in Lalor's office is not so limited. According to plaintiffs' affidavits, Lalor supported his demand for releases by the threat to prosecute. Thus, the demand for releases and the threat to prosecute were interdependent, and we conclude that Lalor is properly viewed as having made a prosecutorial decision, albeit a conditional one.

The nature of absolute immunity is such that it attaches to even conditional prosecutorial decisions, for that immunity "accords protection from ... any judicial scrutiny of the motive for and reasonableness of official action." *Robison v. Via,* 821 F.2d at 918. Inquiry into such "circumstantial qualifiers" as the reasonableness of a condition upon which a decision hinged would "lead[ ] us out of the realm of absolute immunity, in which evaluation of motive and reasonableness is forbidden, and into the realm of qualified immunity." *Id.* at 920. Plea bargaining is perhaps the most common situation in which a prosecutor's decision not to prosecute is conditioned on the defendant's agreement to perform some act in return. Thus, the prosecutor usually agrees to forgo pursuit of a greater number of charges or of more serious charges in exchange for the defendant's agreement to plead guilty to fewer than all

of the charges or to a less serious charge. Though the prosecutor's willingness to drop some charges is thus conditioned on the defendant's agreement to plead guilty to other charges, and the prosecutor's stance could be viewed as coercive since a decision to prosecute on all charges may follow from the defendant's refusal to plead guilty to some, the prosecutor's decisions in this process are protected by absolute immunity from a suit for damages. *See Taylor v. Kavanagh,* 640 F.2d at 451–52 (notwithstanding allegations of fraud and breach of the prosecutor's agreement not to make any recommendation as to a sentence, prosecutor's "conduct in the plea bargaining negotiations ... is protected by the doctrine of absolute prosecutorial immunity").

The fact that a conditional decision with regard to prosecution may be protected by absolute immunity does not mean, however, that the prosecutor may with impunity couple a threat of prosecution with all manner of demands, for example, demands for bribes or sexual favors. A government official does not have absolute immunity for acts that are "manifestly or palpably beyond his authority," *Spalding v. Vilas,* 161 U.S. 483, 498, 16 S.Ct. 631, 637, 40 L.Ed. 780 (1896), or performed in the "'clear absence of all jurisdiction,'" *Stump v. Sparkman,* 435 U.S. 349, 357, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978) (quoting *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1872)). We have noted the applicability of this principle to prosecutors, stating that "where a prosecutor acts without any colorable claim of authority, he loses the absolute immunity he would otherwise enjoy." *Barr v. Abrams,* 810 F.2d 358, 361 (2d Cir.1987). In determining whether the prosecutor should on this basis be denied absolute immunity in a specific case, we may look to the statutes that might have authorized the prosecution, *see id.* at 361–62, and deny absolute immunity if there was no colorable authority; or, if the alleged injuries do not result from a prosecution, we may look to the nature of the conduct that was allegedly intertwined with the prosecutorial de-

cision, *see Lee v. Willins,* 617 F.2d at 322 (threat to deprive witness of custody of her child in order to obtain perjured testimony "might not" be protected by absolute immunity), and deny absolute immunity if the demand was plainly beyond the prosecutor's jurisdiction.

In the present case, we are not confronted with a demand that is foreign to the prosecutor's office, for obtaining a release, which is somewhat analogous to plea bargaining, may be a valid part of the government attorney's function, even when demanded in exchange for the dropping of criminal charges. *See Town of Newton v. Rumery,* 480 U.S. 386, 392, 393 n. 3, 107 S.Ct. 1187, 1192, 1192 n. 3, 94 L.Ed.2d 405 (1987); *id.* at 395-97, 107 S.Ct. at 1193-95 (plurality opinion); *id.* at 399-400, 107 S.Ct. at 1195-1196 (O'Connor, *J.,* concurring in part and in the judgment). Given the fact that the demand for such a release is not beyond the prosecutor's jurisdiction, we conclude that he enjoys absolute immunity from a suit for damages based on that demand. *Accord McGruder v. Necaise,* 733 F.2d 1146, 1148 (5th Cir.1984) (though unreasonable use of the threat to prosecute in order to obtain a release is reprehensible, prosecutor has absolute immunity in damages suit based on prosecution resulting from refusal to execute release).

Finally, we note that even absolute immunity from suits for damages does not provide insulation against other types of sanctions, for our legal system provides a number of other means to hold accountable a prosecutor who uses the threat of prosecution improperly. In *Imbler,* for example, the Supreme Court noted as follows:

> We emphasize that the immunity of prosecutors from liability in suits under § 1983 does not leave the public powerless to deter misconduct or to punish that which occurs. This Court has never suggested that the policy considerations which compel civil immunity for certain governmental officials also place them beyond the reach of the criminal law. Even judges, cloaked with absolute civil immunity for centuries, could be punished criminally for willful deprivations of constitutional rights on the strength

of 18 U.S.C. § 242, the criminal analog of § 1983.... The prosecutor would fare no better for his willful acts. Moreover, a prosecutor stands perhaps unique, among officials whose acts could deprive persons of constitutional rights, in his amenability to professional discipline by an association of his peers.

424 U.S. at 428-29, 96 S.Ct. at 994 (footnotes and citations omitted). Other provisions similarly furnish means to penalize prosecutors who make improper demands and to redress losses suffered by the victims of such demands. *See, e.g.,* 18 U.S.C. § 872 (1982) (forbidding extortion by officers or employees of the United States); 18 U.S.C.A. § 3663 (West 1985 & Supp. 1988) (providing restitution for crime victims); N.Y. Jud. Law § 90(2) (McKinney 1983) (providing for censure, suspension from practice, or removal from office of any attorney guilty of "professional misconduct ... or any conduct prejudicial to the administration of justice").

In addition, it is established that "an official's entitlement to absolute immunity from a claim for damages does not bar the granting of injunctive relief," *Dorman v. Higgins,* 821 F.2d 133, 139 (2d Cir.1987); *see, e.g., Pulliam v. Allen,* 466 U.S. 522, 536-37, 104 S.Ct. 1970, 1977-78, 80 L.Ed.2d 565 (1984), *Heimbach v. Village of Lyons,* 597 F.2d 344, 347 (2d Cir.1979) (per curiam), or of other equitable relief. In the plea bargaining context, for example, prosecutorial misconduct may lead the court to rescind or order specific performance of the plea agreement. *See Santobello v. New York,* 404 U.S. 257, 263, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971).

Further, the absolute immunity that protects prosecutors does not prevent a damages action against other defendants. Nor does it shield those other defendants from an inquiry into the legitimacy of the prosecutor's motives in coupling his decision not to prosecute with the demand for a release. Thus, where the prosecutor has demanded and obtained releases on behalf of arresting officers and the releasing party seeks nonetheless to sue those officers, the court may set aside the releases if it finds that

the prosecutor improperly overreached and that the releases were not given voluntarily. *See Town of Newton v. Rumery*, 480 U.S. 386, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987) (though prosecutor's demand for releases in favor of the arresting officers in exchange for the dismissal of criminal charges is not *per se* unconstitutional, where the prosecutor has not acted reasonably or in pursuit of legitimate law enforcement goals, the courts may refuse to enforce the releases).

In sum, we conclude that though the prosecutor may be exposed to other types of liability for coupling a threat to prosecute with an improper demand, he is entitled to absolute immunity in a suit for damages challenging his demand for a release in exchange for a decision not to prosecute.

## CONCLUSION

The judgment of the district court dismissing plaintiffs' claim against Lalor is affirmed.