Richard F. THOMAS, Plaintiff,

v.

COUNTY OF PUTNAM, Putnam County Sheriff's Department, Paul Velardi, Joseph A. Charbonneau, Robert Langley and Michael Nalbone Defendants.

No. 02 CIV.7904 (WCC).

United States District Court, S.D. New York.

April 21, 2003.

Galgano & Sullivan, White Plains, NY (Kiernan James Sullivan, Esq., Of Counsel), for Plaintiff.

Steinberg & Cavaliere, LLP, White Plains, NY (Neil W. Silberblatt, Esq., Of Counsel), for Defendant, Paul Velardi.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Richard F. Thomas brings the instant action against defendants County of Putnam, Putnam County District Attorney's Office, Putnam County Sheriff's Department, Paul Velardi, Joseph A. Charbonneau, Robert Langley and Michael Nalbone.[1] Plaintiff claims that defendants

---

1. This action is being brought against defendants Velardi and Charbonneau in their individual capacities as well as their capacities as Assistant District Attorneys and against defendants Langley and Nalbone in their individual capacities as well as their capacities as employees of the Putnam County Sheriff's Office.

undertook and conspired to prosecute criminal complaints against him in bad faith, with the intent of depriving plaintiff of his constitutional rights in violation of 42 U.S.C. § 1983. Plaintiff also asserts state law claims for false imprisonment, false arrest, malicious prosecution, negligence and intentional infliction of emotional distress. Defendant Velardi now moves for summary judgment on the grounds that he is immune from suit under the doctrine of absolute immunity. For the reasons stated below, the motion is granted.

## BACKGROUND

Plaintiff's claims against Velardi (and against all other defendants) arise from, and relate to, various criminal complaints filed by Valerie Buchanan against plaintiff and the investigation and prosecution of those complaints. In November of 2000, Buchanan, with whom plaintiff had been having an extra-marital affair, filed a criminal complaint against plaintiff with the Putnam County Sheriff's Department. (Velardi Aff. ¶ 5.) In her criminal complaint, Buchanan alleged that plaintiff had physically assaulted her when she told him that she wished to terminate their relationship.

As a result of this alleged assault, Buchanan sought and obtained an Order of Protection against plaintiff which barred him from contacting or attempting to contact Buchanan. (*Id.* ¶ 9.) On January 24, 2001, Buchanan filed another criminal complaint against plaintiff, claiming that he had violated the Order of Protection. A third criminal complaint was filed alleging that plaintiff had again violated the Order of Protection by repeatedly calling Buchanan at her residence and by otherwise harassing her. (*Id.* ¶ 13.) For these alleged violations of the Order of Protection, plaintiff was charged with aggravated harassment and criminal contempt.

All of Buchanan's various criminal complaints against plaintiff were referred to the Putnam County District Attorney's Office for investigation and possible prosecution. Although defendant Charbonneau was initially assigned to the matter, because he had previously represented Buchanan in another matter, application was made to the District Attorney's Office and an Order of County Court Judge Robert E. Miller was issued appointing defendant Velardi as Special Prosecutor to investigate Buchanan's criminal complaints against plaintiff. (Thomas Aff. ¶ 10.) On or about June 22, 2001, a grand jury was convened by the District Attorney's Office for the purpose of investigating various criminal complaints—including, but not limited to, Buchanan's complaints against plaintiff—and to determine whether there was reasonable cause to believe that criminal conduct had in fact occurred. (Velardi Aff. ¶ 19.)

During that proceeding, Velardi submitted documentary evidence (including Buchanan's medical and hospital records) and presented various witnesses to testify before the grand jury in connection with Buchanan's criminal complaints. Plaintiff also testified before the grand jury, and denied all of Buchanan's allegations of wrongdoing (except for the fact that they had been having an extra-marital affair). (*Id.* ¶ 20.) Following its deliberations, the grand jury declined to indict plaintiff on charges of assault, aggravated harassment and criminal contempt. During the course of his testimony before the grand jury, plaintiff (who was married at the time) admitted to having had an adulterous sexual relationship with Buchanan (who was not married). Based on plaintiff's own admissions and in accordance with what Velardi perceived to be his responsibilities as Special District Attorney, on July 2, 2001, Velardi signed a Misdemeanor Complaint against plaintiff charging him with

the crime of adultery. (Pl.'s Reply Mem. Supp. Summ., J. at 8–9.) Thereafter, Velardi wrote to the court indicating that he believed that he had "exceeded [his] authority in bringing the [misdemeanor] charge against [Mr. Thomas] ... since it was not part of the authorization from the Court as a Special District Attorney." (*Id.* at 10, Ex. E.) In that letter, Velardi tendered his "withdrawal as the prosecutor in this case so that the court can attend to the present charge against [Mr. Thomas] ... as it deems fit." (*Id.*) By Decision and Order dated September 18, 2001, the County Court of the State of New York, County of Putnam (Hon. Robert E. Miller) dismissed the Class B misdemeanor charge against plaintiff. (*Id.* at 10–11.)

## DISCUSSION

### A. *Summary Judgment Standard*

Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ticali v. Roman Catholic Diocese of Brooklyn,* 41 F.Supp.2d 249, 254 (E.D.N.Y. 1999). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant for a reasonable jury to return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ticali,* 41 F.Supp.2d at 254. In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See Ticali,* 41 F.Supp.2d at 255. To defeat summary judgment, the non-movant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1224 (2d Cir.1994).

### I. *Absolute Immunity*

■■■ Prosecutors facing individual capacity liability can claim absolute or qualified immunity. In assessing a prosecutor's claim of absolute immunity, the court must inquire whether the actions in question are part of a prosecutor's traditional function and whether they are closely associated with the judicial process. *Doe v. Phillips,* 81 F.3d 1204, 1209 (2d Cir.1996). Absolute prosecutorial immunity is generally limited to litigation-related activities and decisions whether to prosecute. *Ying Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir.1993); *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). For example, a prosecutor is immune from liability when routinely evaluating and organizing evidence for presentation to a grand jury. *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). In addition, the actual presentation of evidence to a grand jury after a decision to seek an indictment has been made falls squarely within the prosecutor's traditional function. *Id.*

■■■ However, absolute immunity is not available when a prosecutor undertakes conduct that is beyond the scope of his or her litigation-related duties. Thus, when a prosecutor acts in an investigative or administrative capacity rather than in a prosecutorial one, absolute immunity is not

available. *Hill v. City of New York,* 45 F.3d 653, 661 (2d Cir.1995). For example, immunity is not available when a prosecutor releases information or evidence to the media, *Buckley,* 509 U.S. at 276–78, 113 S.Ct. 2606; *Powers v. Coe,* 728 F.2d 97, 103 (2d Cir.1984), authorizes or directs the use of wiretaps, *Id.* at 103, or performs the functions normally performed by the police such as assisting in the execution of a search or seizure. *See Buckley,* 509 U.S. at 273, 113 S.Ct. 2606. Although declining to establish a bright-line test, the Second Circuit has observed that "in each of the cases we have reviewed where absolute immunity was upheld, some type of formal proceeding had been commenced or was being commenced by the challenged acts. Conversely, where no proceedings have begun, qualified immunity is the norm." *Barbera v. Smith,* 836 F.2d 96, 99 (2d Cir.1987).

To resolve the issues raised in Velardi's motion, we must determine whether the Special Prosecutor performed the conduct alleged in the pleadings as part of his traditional prosecutorial functions, and whether that conduct is closely associated with the judicial process. Plaintiff's claim that Velardi is not entitled to immunity centers on the adultery charge filed against him. Specifically, plaintiff charges that:

a. It was patently unreasonable to charge Mr. Thomas with the antiquated crime of adultery in response to . . . the grand jury's decision to find there was no probable cause to believe that he had committed any of the eleven charged offenses.

b. He violated a court order, which limited his authority in connection with in-

vestigating only the offenses for which the grand jury refused to indict.

c. In unlawfully filing the adultery charge, he committed a crime by unlawfully disclosing Mr. Thomas's grand jury testimony in contravention of both the special prosecutor order and New York's Penal § 215.70.

d. . . . the adultery filing violated Mr. Thomas's clearly established statutory right under New York Criminal Procedure Law § 190.70, which restricts a prosecutor's authority to file an accusatory instrument after a grand jury hears evidence.

e. All of the underlying prosecutions, including the adultery prosecution, violated Mr. Thomas's clearly established right to Equal Protection under the laws and the right to be free from malicious, vexatious and unwarranted criminal process.

(Pl.'s Mem. Opp Mot. Summ J. at 2–3.)

■ It is clear that Velardi's filing of the adultery charge was no more than a litigation-related decision to prosecute—a core court-related role within the meaning of *Imbler.* Plaintiff seeks to avoid absolute immunity, however, by arguing that a prosecutor initiating a prosecution loses the protection of *Imbler* where state law did not empower the prosecutor to bring the charges.[2] The Second Circuit rejected this very argument in *Barr v. Abrams,* 810 F.2d 358 (2d Cir.1987). There the court acknowledged that although the Supreme Court did not specifically decide this issue, it was nevertheless persuaded that a "crabbed reading of *Imbler,* and a holding that a prosecutor is without absolute immunity the moment he strays beyond his

---

**2.** Plaintiff also argues that Velardi's filing of the adultery charge violated the court order appointing him as a Special District Attorney. That court order provided that Velardi was to "possess the powers and discharge the duties of Special District Attorney as provided by law" with respect to the charges of criminal contempt against plaintiff. (Pl.'s Mem. Opp. Mot. Summ. J., Ex. E.)

jurisdictional limits, would do violence to its spirit." *Id.* at 361. The purpose of the immunity rule is to "give to public officials entrusted with sensitive tasks a protected area of discretion within which to carry out their responsibilities." *Id.* The *Barr* court believed that if it were to adopt a rule similar to the one plaintiff advances here, it would "cause a deflection of the prosecutor's energies from his public duties" and force him to "shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.* (citing *Imbler*, 424 U.S. at 423, 96 S.Ct. 984).

It does not follow, however, that the issue of whether a prosecutor is acting within his jurisdiction has no relevance to the type of immunity he enjoys. In *Stump v. Sparkman*, 435 U.S. 349, 356, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), the Supreme Court stated that judges are absolutely immune from § 1983 actions only for judicial acts for which they have at least a semblance of jurisdiction. Where a judge proceeded in "the clear absence of all jurisdiction," the court ruled, a different result would be in order. *Id.* The Second Circuit has held that the same rule should apply in the case of prosecutorial immunity. *See Barr*, 810 F.2d 358 at 361 ("Since it is well settled that the immunity of prosecutors is based on the same considerations that underlie the immunity of judges and since there is no functional basis for according a greater degree of protection to prosecutors than to judges, a dissimilar standard would be incongruous.").

■■■■■■ Thus, unless a prosecutor proceeds in the clear absence of all jurisdiction, absolute immunity exists for those prosecutorial activities intimately associated with the judicial phase of the criminal process. Conversely, where a prosecutor acts without any colorable claim of authority, he loses the absolute immunity he would otherwise enjoy. *Id.* Here, we are convinced that plaintiff fails to meet the threshold test required to overcome the bar of absolute immunity: a showing that the prosecutor proceeded against him in the clear absence of jurisdiction. Velardi brought the misdemeanor complaint against plaintiff charging him with the crime of adultery based on plaintiff's admission, during the course of his testimony before the Grand Jury to having had an adulterous sexual relationship.[3] (Def.'s Reply Mem Supp Summ. J. at 8.) Two months later, Velardi acknowledged, by letter to the court, the fact that he exceeded his authority in bringing the adultery charge against plaintiff and withdrew as the prosecutor in the case. (Pl.'s Mem. Opp Mot. Summ J., Ex. K.) A week later, the adultery charge was dismissed. (*Id.*, Ex. L.) Therefore, to the extent that plaintiff has suffered any harm as a result of Velardi's filing of the adultery charge, we find that harm to be *de minimis*. Moreover, even if we were to find that Velardi's conduct in filing the adultery charge against plaintiff was without any colorable claim of authority, he would nevertheless remain protected by the shield of qualified immunity. *See Barr*, 810 F.2d 358 at 361; *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

## CONCLUSION

For the reasons stated above, defendant Velardi's motion for summary judgment is granted and all claims against Velardi are

---

**3.** We find no unlawful grand jury disclosure pursuant to New York Penal Law Section 215.70 because Velardi simply disclosed plaintiff's testimony in the accusatory instrument to initiate an adultery prosecution—a litigation-related decision to which immunity attaches.

dismissed. The request of Velardi for attorneys' fees or other sanctions is denied.

**SO ORDERED.**