[686 NYS2d 367]

ABRAHAM HIRSCHFELD, Respondent, v CITY OF NEW YORK et al., Defendants, and ROBERT M. MORGENTHAU et al., Appellants.

First Department, February 11, 1999

**APPEARANCES OF COUNSEL**

*Amyjane Rettew* of counsel (*Robert M. Morgenthau, District Attorney* of New York County), for appellants.

*Bud G. Holman* of counsel (*Benjamin H. Green, Paul F. Doyle, Thomas M. Licata* and *Scott H. Mandel* on the brief; *Kelley Drye & Warren, L. L. P.,* attorneys), for respondent.

**OPINION OF THE COURT**

WILLIAMS, J.

In August 1994, the New York State Department of Taxation and Finance made a criminal referral to the New York County

District Attorney's Office (the DA's Office) recommending that Abraham Hirschfeld, the plaintiff in this case and a well-known real estate developer and political activist, be the subject of an investigation relating to alleged criminality in individual and corporate transactions conducted from 1988 to 1993. On the basis of that recommendation, the DA's Office commenced such an investigation of plaintiff for possible violations of State tax laws.

In furtherance of the investigation, the DA's Office issued four Grand Jury subpoenas duces tecum to Citibank, N.A. (Citibank), directing it to produce records pertaining to certain financial transactions of plaintiff and/or his companies. The subpoenas were dated December 1, 1994, December 22, 1994, October 24, 1995 and April 26, 1996 and were returnable on December 16, 1994, January 20, 1995, November 14, 1995 and May 10, 1996, respectively. Grand Juries were in session on each of the return dates. The subpoenas were issued under a "John Doe" caption to protect plaintiff's identity, sought evidence relevant to the matters under investigation, and required that Citibank produce the relevant records before the Grand Jury. The subpoenas included a proviso whereby Citibank, at its option, could have the documents delivered to the Assistant District Attorney's (ADA) attention at the DA's Office; later, the ADA agreed to accommodate Citibank by sending someone to review the documents at its office in an effort to narrow the scope of the subpoenas.

The Grand Jury to which the first subpoena was returnable was impaneled several days after the subpoena's issuance. The term of that Grand Jury ended before the investigation was completed, which required that the investigation be reopened before succeeding Grand Juries until August 1996, when, at the request of the DA's Office, the Supreme Court impaneled a Special Grand Jury to hear evidence in this matter.

Shortly thereafter, plaintiff commenced this action asserting one cause of action for abuse of process and deprivation of rights and privileges guaranteed and secured by the Constitution and laws in violation of 42 USC § 1983. He alleged that at the time the subpoenas were issued, served and returnable, upon information and belief, no Grand Jury proceeding or criminal action was pending; that defendants acted maliciously and without justification in issuing the subpoenas "without any Grand Jury involvement" in an effort to "ruin [ ]" his reputation and business or as "an act of retribution and harassment" or to "win a collateral advantage" by developing evidence for

subsequent criminal prosecutions; and that such actions resulted in damages due to loss of business and severe emotional distress. Defendants answered, denying liability.

Defendants then moved for summary judgment, in January 1997, on grounds that the issuance of the subpoenas was justified; that a duly assigned Grand Jury was in existence on the return date of each subpoena; that plaintiff failed to allege a specific constitutional or civil right that had been violated; that the investigation [and the subpoenas] were designated "John Doe" matters to prevent any unfair inference as to plaintiff's involvement or the nature of the investigation; and that the subpoenas were issued to third parties and plaintiff had no basis to assume their rights. Defendants also asserted the defense of absolute prosecutorial immunity. The moving papers were supported by an affidavit of a New York County Grand Jury Warden that stated that, as such, he was the custodian of records for Grand Juries convened in that county and that his records showed that on the return date of each of the subpoenas, a Grand Jury was impaneled and convened and had on its calendar an investigation that corresponded to the case numbers set forth on the respective subpoenas.

During the pendency of the summary judgment motion, defendants filed a 123-count indictment against plaintiff charging him and seven of his companies with scheme to defraud in the first degree, grand larceny in the second degree, offering a false instrument for filing, and various tax offenses. Allegedly, defendants insisted that plaintiff be available for arraignment on the morning of May 1, 1997, which happened to be the exact date and time he had scheduled his press conference announcing his candidacy for Manhattan Borough President. It was further alleged that news of the arraignment was leaked to the press and that they were in attendance.

In June 1997, plaintiff cross-moved to amend the complaint. The cross motion was resolved by stipulation which, among other things, granted leave to serve the amended complaint on the condition that the pending motion for summary judgment on the ground of prosecutorial immunity be deemed to address all causes of action therein. The amended complaint updated events and alleged three claims: abuse of process and violation of 42 § USC 1983; interference with business relationships; and prima facie tort.

Plaintiff alleged in opposition to summary judgment that defendants violated his First Amendment right to participate in the political process and tried to discredit his professional

and personal reputation. It was his contention that prosecutorial immunity did not shield defendants' conduct here, where the investigation was politically motivated and not a legitimate inquiry into purported criminal conduct. He claimed actual damages to his business due to the loss of millions of dollars of financing commitments, which in some instances resulted in forced sale of properties at a "crushing loss". He also claimed damage to his personal, professional and political reputation and relationships. Although plaintiff did concede at this point that the Grand Juries were in existence on the subpoenas' return dates, he still maintained that his action was viable because the first subpoena was dated before the Grand Jury was impaneled and defendants "acted improperly" in leaking information to the press.

The motion court denied defendants summary judgment as to the abuse of process and Federal civil rights claims, but granted summary judgment and dismissed plaintiff's wrongful interference with business relations and prima facie tort claims. The court, in upholding the abuse of process claim, looked askance at the circumstances surrounding the first subpoena—it was issued by the prosecutor prior to commencement of any proceeding—since it arguably could have been seen as being used improperly, i.e., to summon witnesses to a place where the Grand Jury was not convened or to conduct an investigation at the prosecutor's behest unrelated to a Grand Jury proceeding (see, Rodrigues v City of New York, 193 AD2d 79). The court rejected defendants' assertion of absolute prosecutorial immunity, since there was no pending Grand Jury proceeding, and further noted that their entitlement to qualified immunity was subject to challenge upon a showing of malice, and that plaintiff's allegation that defendants' investigation was "politically motivated" raised an issue of fact as to whether such entitlement exists here. Finally, the court found that a Federal civil rights claim had been sufficiently established by plaintiff's allegations that the first subpoena was improperly issued and that his business suffered injury as a result of defendants' efforts to discredit his public and professional reputations by issuance of the subpoenas and press releases.

The primary issue on this appeal is whether issuing a Grand Jury subpoena when the Grand Jury is not impaneled on the date of issuance constitutes an abuse of process. This appeal also poses the additional issues of whether plaintiff's abuse of process claim is defeated by absolute or qualified prosecutorial

immunity and whether plaintiff adequately stated a Federal civil rights claim.

■ Plaintiff's contention that for a Grand Jury subpoena to be lawful, the Grand Jury must be impaneled prior to the issuance of the subpoena, is contrary to the existing authorities on the subject. Indeed, in *People ex rel. Van Der Beek v McCloskey* (18 AD2d 205, 208), this Court held that "[w]hen the District Attorney, on his own initiative, issues and serves such a subpoena in good faith, a proceeding is instituted in the Grand Jury just as, in an analogous situation, a civil action is commenced by the service of a summons". There is no requirement that the People open a Grand Jury proceeding prior to the return date of a Grand Jury subpoena (*see, People v Coastal Oil N. Y.,* NYLJ, June 4, 1998, at 30, col 3, at 31, col 4 [S Ct, NY County]), or that the subpoena's validity depends on "the existence of a particular Grand Jury at any specific time" (*Matter of Brunswick Hosp. Ctr. v Hynes,* 52 NY2d 333, 339, n 2 [dictum]). What is required is that the Grand Jury be convened, or intended to be convened, on the return date of the subpoena so that the witness has access, if he chooses, to prompt judicial resolution of any challenge to the scope or propriety of his examination (*see, Virag v Hynes,* 54 NY2d 437, 441).

When these principles are applied to the facts at issue, it is clear that the issuance of the first subpoena here was not an abuse of process or violation of plaintiff's civil rights. The record shows that the Assistant District Attorney issued the subpoena on December 1, 1994 in good faith on the basis of the Taxation Department referral, and that the Grand Jury was impaneled several days later. On the return date of the subpoena, the Grand Jury had been convened and a matter bearing the identification number on the subpoena was calendared before the Grand Jury. The provision on the subpoena allowing for production of the documents to the DA's Office and the offer to review documents on Citibank's premises, at Citibank's request, were not mandatory and were, apparently, efforts to make compliance with the subpoena less onerous. There was no showing that these efforts constituted attempts by the Assistant District Attorney to conduct an investigation outside of the auspices of the Grand Jury, as in *Rodrigues v City of New York* (193 AD2d 79, 82, *supra* [abuse of process claim involving Grand Jury subpoena allowed to proceed because prosecutors did not intend to convene Grand Jury, instead directed target-plaintiff to prosecutors' office for

"deposition-type statements"]) or in *People v Carkner* (213 AD2d 735, *lv denied* 86 NY2d 733 [People have no authority to subpoena hospital records when there is no Grand Jury proceeding or criminal action]).

Since the record establishes that there was an objective, good-faith justification to issue the first subpoena and that it was returnable before a sitting Grand Jury, there is no question but that the Assistant District Attorney was acting in her quasi-judicial role as the Grand Jury's legal advisor and is thus entitled to absolute immunity from civil claims arising out of that prosecution (*Schanbarger v Kellogg*, 35 AD2d 902, *mot to dismiss appeal granted* 29 NY2d 649, *lv denied* 29 NY2d 485 *cert denied* 405 US 919; *Rodrigues v City of New York*, 193 AD2d 79, 85, *supra*; *Ying Jing Gan v City of New York*, 996 F2d 522, 530; *Imbler v Pachtman*, 424 US 409, 431 [absolute liability for initiating a prosecution]; *see also, Moore v Dormin*, 252 AD2d 421; *Arteaga v State of New York*, 72 NY2d 212, 217, n 1). As noted by Justice Tom in his concurring memorandum in *Moore*: "Under New York law, a District Attorney, in prosecuting crime, is performing a quasi-judicial function and as such is entitled to absolute immunity from civil claims arising out of the scope of that prosecution * * * The absolute immunity arising from the prosecutor's exercise of his quasi-judicial discretion reflects a public interest in shielding public officials from retaliatory lawsuits so as to allow them to freely exercise their discretion within the scope of their duties * * * Our courts take a functional approach to the issue * * *

"[w]e have linked a prosecutor's entitlement to absolute immunity to the nature of the function being performed rather than to the office itself * * * absolutely protecting a prosecutor's statements made during the initiation of a criminal investigation or during the judicial phase of a criminal proceeding" (*Moore v Dormin, supra,* at 426).

Inasmuch as we find that absolute immunity exists here, we need not delve into the issue of whether defendants have qualified immunity, which shields prosecutors acting outside of their quasi-judicial role, such as in an investigative capacity (*Rodrigues v City of New York, supra,* at 85-86; *Ying Jing Gan v City of New York, supra,* at 528; *Imbler v pachtman, supra,* at 430). However, suffice it to say that nothing in the record before us indicates other than a good-faith, lawful exercise of discretion in the Assistant District Attorney's issuance of the subpoena, that did not "violate [any] clearly established statutory or constitutional rights of which a reasonable person would

have known" at the time the conduct occurred (*Harlow v Fitzgerald*, 457 US 800, 818; *Imbler v Pachtman, supra,* at 430; *Liu v New York City Police Dept.*, 216 AD2d 67, 68, *lv denied* 87 NY2d 802, *cert denied* 517 US 1167).

Consequently, plaintiff's abuse of process claim should have been dismissed. This is true not only due to absolute immunity, but because the facts that establish immunity also prove the claim to be fatally defective. An abuse of process claim requires that the claimant prove that there was regularly issued process, an intent to do harm without excuse or justification, and the use of such process in a perverted manner to obtain a collateral objective (*Curiano v Suozzi*, 63 NY2d 113, 116). As noted above, the subpoena was timely issued on the basis of the Taxation Department referral and was returnable before a sitting Grand Jury, hence there was no intent to do harm without justification nor was there any showing that the subpoena was used for anything other than its intended purpose, gathering evidence to be presented to the Grand Jury.

█ Finally, plaintiff's Federal civil rights claims must also be dismissed. His allegations sounding in State law tort do not constitute Federal civil rights claims "unless the commission of the tort also violates a right guaranteed plaintiff under the Constitution or federal statute" (*Rodriguez v Phillips*, 66 F3d 470, 476; *Cook v Sheldon*, 41 F3d 73, 77). Plaintiff fails to successfully specify any constitutional or civil right that was violated.

Plaintiff does not establish the violation of a Federal civil right with his assertion that his First Amendment right to engage in protected political speech and to participate in the electoral process was violated by defendants' alleged retaliatory tactics of conducting a protracted Grand Jury investigation, scheduling his indictment and arraignment to coincide with the announcement of his candidacy, and leaking his arraignment to the press. The alleged tactics did not deny his constitutional right to run for office (*see, Flinn v Gordon*, 775 F2d 1551, 1554, *cert denied* 476 US 1116).

Plaintiff also asserts that he suffered deprivation of property without due process in that his business was actually damaged by defendants' alleged abuse of criminal process while acting under color of State law. He cites as damages loss of financing and banking relationships, and further asserts that abuse of process alone sufficiently establishes a Federal civil rights claim (*see, Cook v Sheldon*, 41 F3d 73, 80, *supra*). These arguments are rendered moot by the proof here that there was no

abuse of process and our consequent finding that absolute immunity exists. In any case, the damages alleged were actually the result of harm done to his reputation, not any separate injury caused by defendants' actions. The issuance of the subpoenas did not directly bar him from obtaining loans from his bankers. Damage to reputation, however, is not a cause of action under Federal law (*see, Siegert v Gilley*, 500 US 226, 233-234, *reh denied* 501 US 1265; *Paul v Davis*, 424 US 693, 701-713, *reh denied* 425 US 985).

Plaintiff's reliance on *Rodrigues v City of New York* (193 AD2d 79, *supra*) in support of his claims of Federal civil rights violations is misplaced. Here, unlike *Rodrigues*, the record establishes that the subpoena in question was lawfully issued and that the Assistant District Attorney was entitled to absolute immunity. The press releases in *Rodrigues* were false whereas here, the press release in question simply announced that plaintiff had been indicted, which was true. There was an element of harassment in *Rodrigues* that not only injured his reputation but also his property interests. Here, the damages to property alleged to have resulted from harassment were purely speculative.

Accordingly, the order of the Supreme Court, New York County (Phyllis Gangel-Jacob, J.), entered February 11, 1998, which, to the extent appealed from, denied that portion of defendants' motion seeking summary judgment dismissing plaintiff's abuse of process and Federal civil rights violation claims, should be reversed, on the law, without costs, summary judgment granted to defendants and the complaint dismissed. The Clerk is directed to enter judgment in favor of defendants-appellants dismissing the complaint as against them.

ROSENBERGER, J. P., RUBIN and SAXE, JJ., concur.

Order, Supreme Court, New York County, entered February 11, 1998, reversed, on the law, without costs, that portion of defendants' motion seeking summary judgment dismissing plaintiff's abuse of process and Federal civil rights violation claims granted and the complaint dismissed.