Carrie **COAKLEY** and Donald C. **MacPherson**, Plaintiffs,

v.

Michael **JAFFE**, Daniel I. **Neveloff**, **Daniel Driscoll**, in his official capacity as Suffolk County Assistant District Attorney and individually, DOE 1 in his official capacity as Suffolk County Assistant District Attorney and individually, Steven W. Heller and DOE 2, Defendants.

No. 98 Civ. 2473 (JSR).

United States District Court, S.D. New York.

April 23, 1999.

---

Patricia Weiss, Sag Harbor, NY, for plaintiff.

Adam M. Jaffe, Bronx, NY, for Michael Jaffe.

Joseph J. Spofford, Carmel, NY, for Daniel Neveloff.

Charles D. Cunningham, New York City, for Daniel Driscoll.

Steven W. Heller, New York City, defendant pro se.

## MEMORANDUM ORDER

RAKOFF, District Judge.

Defendants pending motions to dismiss are hereby granted in part and denied in part.

For purposes of these motions, the following allegations, drawn from the plaintiff's Amended Complaint, are assumed to be true. *See Sheppard v. Beerman,* 94 F.3d 823, 827 (2d Cir.1996). On or about August 15, 1994, plaintiff Coakley and the 53 West Tiana Road Corporation ("Tiana Road Corp.") leased a home in Southampton from Mahmood and Joanna Karimi ("the Karimis") for a period to run from May to September of 1995. *See* Amended Complaint ¶ 17. Subsequently, Coakley and Tiana Road Corp. sublet the Karimis' home to defendant Michael Jaffe, who, together with defendant Daniel I. Neveloff, then sold "summer shares" in the property in violation of a Southampton zoning ordinance. *See id.* ¶¶ 20–21, 27–33. In response, the Karimis brought suit in state court and obtained a judgment terminating the original lease to Coakley and Tiana Road Corp. *See id.* ¶¶ 35–39, 43–44. This had the further effect of terminating Jaffe's sublease and causing his eviction. *See id.* ¶ 43–44. Jaffe responded in turn by filing a separate suit in state court making claims of fraud, breach of contract, and the like against the plaintiffs here (Coakley and MacPherson), Tiana Road Corp., the Karimis, and other parties including one Danny Pustovit. *See id.* ¶¶ 45–47. Jaffe retained defendant Steven W. Heller, Esq. to represent him in the action, while the plaintiffs and Pustovit

hired an attorney named Irwin Popkin, Esq. *See id.* at ¶¶ 47, 49.

Thereafter, according to the Amended Complaint, Jaffe, Heller and Neveloff conspired to gain an unfair advantage in Jaffe's civil suit by obtaining an unwarranted criminal indictment of the plaintiffs. *See id.* ¶ 59. To this end, Jaffe, Heller, and Neveloff disseminated misleading information to the Suffolk County District Attorney's Office, and eventually obtained the connivance of defendant Daniel Driscoll, an Assistant District Attorney, who was assigned to investigate the case. *See, e.g., id.* ¶¶ 59, 69, 97, 118–22. Driscoll not only conducted a flawed investigation, *see id.* ¶ 66, but purportedly impeded the plaintiffs' ability to defend themselves by contacting Pustovit, a co-defendant in Jaffe's civil case against the plaintiffs, persuading him to obtain a lawyer other than Popkin (who until that time represented both Pustovit and the plaintiffs), and threatening to prosecute Pustovit if he did not cooperate with the criminal investigation. *See id.* ¶ 62–63.

As a result of the conspirators' efforts, plaintiffs were indicted in August 1996 on charges of fraud and grand larceny. *See id.* ¶ 67. Following their voluntary surrender, *see id.* ¶ 68, they were released on their own recognizance, subject to the requirement of thereafter appearing in court, which they did on several occasions. *See id.* ¶ 71.

The conspiracy purportedly achieved its further object of advancing Jaffe's civil suit when Jaffe won partial summary judgment by emphasizing to the judge that plaintiffs had been indicted, thereby creating the misimpression that "there was some criminal wrongdoing afoot." *Id.* ¶¶ 81–82. Additionally, plaintiff MacPherson allegedly suffered further harm when certain gun permits were revoked as a result of his arrest and prosecution. *See id.* ¶ 73.

Subsequently, however, upon motion of the District Attorney, the charges against the plaintiffs were dismissed pursuant to

New York Criminal Procedure Law § 210.40, *see id.* ¶¶ 86, which provides for the dismissal of criminal cases in the interests of justice. *See* C.P.L. § 210.40(3). In the same proceeding, Tiana Road Corp. pled guilty to disorderly conduct, agreed not to engage in any rental activity with the plaintiffs, and agreed not to engage in any rental activity in Suffolk County for one year. *See* Amended Complaint ¶ 93.

On April 7, 1998 (a year after the criminal charges were dismissed), the plaintiffs filed this suit. On defendants' motion, plaintiffs' original Complaint was dismissed without prejudice on July 23, 1998. On August 12, 1998, plaintiffs filed an Amended Complaint alleging federal claims under 42 U.S.C. §§ 1983, 1985(2), 1985(3), and 1986, and pendent state law claims for false arrest, malicious prosecution, abuse of process, breach of contract, violations of the New York State Constitution, and negligence. Defendants duly moved to dismiss.

■ Upon review of the parties' extensive written submissions and oral arguments, the Court, for the following reasons, dismisses all of the plaintiffs' claims against all defendants[1] *except:* (1) plaintiffs' federal claim against defendants Jaffe, Heller and Neveloff for false arrest under 42 U.S.C. § 1983; (2) plaintiff's state law claim against Jaffe, Heller and Neveloff for abuse of process; and (3) plaintiffs' state law claim against Jaffe for breach of contract.[2]

■ Taking the claims in the order they appear in the Amended Complaint (except for Counts VI and VII, which are appro-

priately considered together with Count I), *Count I* of the Amended Complaint purports to state federal claims for both false arrest and malicious prosecution under 42 U.S.C. § 1983, while *Count VI* purports to state a false arrest claim under New York State law and *Count VII* purports to state a claim for malicious prosecution under state law. With respect to the malicious prosecution claims, both of those claims, under federal and state law respectively, must be dismissed because the plaintiffs cannot prove, among other things, that the criminal proceedings against them were terminated in their favor, an essential element of such a claim. *See Cook v. Sheldon,* 41 F.3d 73, 79 (2d Cir.1994).

■ Specifically, the criminal charges against the plaintiffs were dismissed in the interests of justice pursuant to New York Criminal Procedure Law § 210.40. As a general rule, such a dismissal cannot constitute a favorable termination, *see Hygh v. Jacobs,* 961 F.2d 359, 368 (2d Cir.1992); *MacLeay v. Arden Hill Hospital,* 164 A.D.2d 228, 563 N.Y.S.2d 333, 334–35 (3d Dep't 1990), *cf. Ryan v. New York Tel. Co.,* 62 N.Y.2d 494, 504–505, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984), unless the circumstances surrounding the dismissal are indicative of innocence, *see Hankins v. Great Atlantic & Pacific Tea Co.,* 208 A.D.2d 111, 622 N.Y.S.2d 678, 680–81 (1st Dep't 1995). Here, the transcript of the dismissal proceedings in Suffolk County Court makes unequivocally clear that the dismissal was the result of a plea bargain and thereby forecloses the possibility that the termination was favorable.[3] *See Mur-*

---

1. Although defendant Neveloff did not bring a motion to dismiss, he is similarly situated to the other defendants with respect to the claims dismissed. Accordingly, the Court dismisses those claims as to Neveloff *sua sponte. See Board of Trustees of Trucking Employees v. Canny,* 876 F.Supp. 14, 17 (N.D.N.Y.1995); *Walner v. Friedman,* 410 F.Supp. 29, 34 (S.D.N.Y.1975); *see also Leonhard v. United States,* 633 F.2d 599, 609 n. 11 (2d Cir.1980).

2. While the parties were initially advised of these rulings in a telephone conference on

November 10, 1998, the Court at that time indicated that the plaintiffs' negligence claim would not be dismissed. Upon further consideration, however, the Court concludes, for the reasons discussed *infra,* that that claim must be dismissed as well.

3. The transcript of the proceedings is properly considered on these motions to dismiss because the proceedings themselves are expressly referenced in the Amended Complaint, *see, e.g.* Amended Complaint ¶¶ 85–86, the plaintiffs have actual notice of the transcript's

*phy v. Lynn*, 118 F.3d 938, 949 (2d Cir. 1997) (a dismissal is not favorable if it is "the result of a compromise to which the accused agreed"), *citing Halberstadt v. New York Life Insurance Co.*, 194 N.Y. 1, 11, 86 N.E. 801 (N.Y.1909).

The pertinent portion of the transcript reads as follows:

THE COURT: It's my understanding that the indictments are to be dismissed against the individual[s]; is that correct?

MR. McVANN [the lawyer representing both the plaintiffs and Tiana Road Corp.]: That's correct.

MR. ZANGRI [the prosecutor]: Yes, your Honor.

THE COURT: Are they officers of [Tiana Road Corp.]?

MR. McVANN: They are.

THE COURT: What officers are they?

MR. McVANN: President and secretary.

THE COURT: They're going to get a conditional discharge?

MR. McVANN: Yes, they will.

THE COURT: And the conditional discharge will be that they will not participate with the corporation in any summer rentals in Suffolk County in any real estate transactions for a period of one year; is that correct?

MR. McVANN: That's correct.

THE COURT: Do you understand that sir?

DEFENDANT MACPHEARSON: Yes, sir.

THE COURT: Miss Coakley, do you understand that?

DEFENDANT COAKLEY: Yes, I do.

Def. Heller Mot. to Dismiss, Ex. 3, Transcript, *People v. Donald MacPhearson et. al.*, April 7, 1997, at 4–5.

■ This colloquy definitively establishes that the plaintiffs' conditional discharge was in no way a determination of their innocence or otherwise "favorable" to them in the manner that would permit the filing of a malicious prosecution claim. Moreover, if there were any remaining doubt of this conclusion—and there is none—it was resolved by the Suffolk County Judge's further statement, a few moments later, that the charges against the plaintiffs were being dismissed "in satisfaction of the plea by the corporation" to disorderly conduct. *Id.* at 7–8. As noted above, the plaintiffs had already confirmed that they were, respectively, the President and Secretary of Tiana Road Corp. The official transcript of the state proceedings thus establishes as a matter of law that the charges against the plaintiffs were dismissed in return for their agreeing to plead the corporation guilty and to stay out of the real estate market for a period of a year.[4] Since the dismissal was therefore "the result of a compromise to which the accused agreed," it was not a favorable termination, *Murphy v. Lynn*, 118 F.3d at 949, and plaintiffs' malicious prosecution

---

contents (having personally participated in the proceedings transcribed), and the transcript is a public document integral to the case. *Cf. Cortec Industries v. Sum Holding*, 949 F.2d 42, 47–48 (2d Cir.1991). Moreover, a court may take judicial notice of related litigation. *See Shuttlesworth v. Birmingham*, 394 U.S. 147, 157, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); Fed.R.Evid. 201.

4. Plaintiffs claim there is an ambiguity in the official record because it was thereafter sealed pursuant to orders that include boilerplate recitations that sealing was appropriate because the charges against the plaintiffs were terminated in their favor. *See* Pl. Mot.

Jud. Not. Exs. 1, 2. But "favorable termination" for purposes of sealing, pursuant to C.P.L. § 160.50, is considerably broader than "favorable termination" for purposes of a malicious prosecution claim or the like. *Compare, e.g.*, C.P.L. § 160.50(3)(b) (dismissal pursuant to § 170.55 favorable) *with Hollender v. Trump Village Cooperative, Inc.*, 58 N.Y.2d 420, 424–25, 461 N.Y.S.2d 765, 448 N.E.2d 432 (N.Y.1983) (dismissal pursuant to § 170.55 not favorable). Moreover, the detailed transcript of the plea, set forth above, takes precedence over any ministerial sealing order.

claims, under both § 1983 and New York State law, must be dismissed.

With respect to the false arrest claims, the Court concludes that plaintiffs' state law claim of false arrest under Count VI must be dismissed but that plaintiffs' federal false arrest claim forming part of Count I survives to the extent that it is asserted against defendants Jaffe, Heller, and Neveloff.

■ Dismissal of the state law claim of false arrest is required because the statute of limitations has run. Under New York law, a false arrest claim is subject to a one year limitations period that runs from the date the plaintiff was released from custody. *See* C.P.L.R. § 215(3); *Jastrzebski v. City of New York*, 423 F.Supp. 669, 672 n. 1; *Karen v. State*, 111 Misc.2d 396, 444 N.Y.S.2d 381, 383 (Ct.Cl.1981). Here, the allegations of the Amended Complaint establish that plaintiffs were released more than one year before this action was filed on April 7, 1998. Specifically, plaintiffs allege that they were arrested in or about August of 1996, and immediately released on their own recognizance following arraignment. *See* Amended Complaint ¶¶ 67–68, 71, 72.

■ In response, plaintiffs, purporting to rely on C.P.L.R. § 215(8), argue that the false arrest claim should be deemed to have accrued, not on the date of release, but on the date the criminal charges were dismissed, *i.e.*, April 7, 1997 (or exactly one year before the instant lawsuit was commenced). However, C.P.L.R. § 215(8) provides only that when a plaintiff brings one of a number of intentional tort claims against a particular defendant and it is shown that a criminal action has been brought against the "same defendant," the statute of limitations on the tort claim will run for one year from the date the criminal action is terminated. C.P.L.R. § 215(8). Thus, the rule by its terms has no application where, as here, the civil action involves a different defendant than the criminal action. *See Robinson v. Franklin General Hosp.*, 160 Misc.2d 893, 611 N.Y.S.2d 778, 779 (N.Y.Sup.1994). Indeed, to apply the rule in a case such as this one, where the criminal defendant and the civil plaintiff are one and the same, would run contrary to the purpose of the rule, which is to prevent victims of crime from being forced to undergo the vicissitudes of civil proceedings before the parallel criminal proceedings are completed, see id. Accordingly, § 215(8) is inapplicable and the plaintiffs' common law false arrest claim must be dismissed.[5]

■ By contrast, plaintiffs' federal false arrest claim under § 1983 survives as to defendants Jaffe, Heller and Neveloff, though not as to defendant Driscoll. Although there is no statute of limitations problem as to the federal claim, defendants, noting that probable cause constitutes a complete defense to a claim of false arrest under § 1983, *see Singer v. Fulton County Sheriff*, 63 F.3d 110, 118–19 (2d Cir.1995), argue that dismissal is still required because the plaintiffs' indictment by the Grand Jury creates a presumption of probable cause, *see Bernard v. United States*, 25 F.3d 98, 104 (2d Cir.1994). However, this presumption may be overcome by establishing that the indictment was procured by fraud, perjury, suppression of evidence, or other bad faith con-

---

5. Although not all of the defendants raised this statute of limitations defense, the Court nevertheless dismisses the plaintiffs' state law false arrest claim as to all defendants. Where one defendant has successfully raised a statute of limitations defense with respect to a particular claim, a court may also dismiss the claim *sua sponte* as to similarly situated defendants who have failed to raise the defense. *See Rogers v. CAB Associates*, No. 96 Civ. 8589(KMW), 1997 WL 401820, *4 (S.D.N.Y. 1997); *Owens v. Harris*, No. 94 civ. 5968(JFK), 1996 WL 399806, *1 (S.D.N.Y. July 16, 1999); *Smith v. Stein*, No. 93 Civ. 6559(KMW), 1995 WL 7972, *2 (S.D.N.Y. Jan.10, 1995); *Jones v. Local 705*, No. 86 C 3415, 1986 WL 15122, *1 (N.D.Ill. Dec.31, 1986); *see also Leonhard* 633 F.2d at 609 n. 11; *cf. Pino v. Ryan*, 49 F.3d 51, 53–54.

duct, *see id.*, which is precisely the conduct that plaintiffs have here alleged, *see, e.g.*, Amended Complaint ¶ 69, 77. Accordingly, since the Court is obliged on a motion to dismiss to assume the truth of well-pleaded allegations, *see Sheppard*, 94 F.3d at 827, the Court cannot here presume the existence of probable cause.

 Nor, so far as the false arrest claim is concerned, can the Court dismiss the claim on the ground that the criminal proceedings against the plaintiffs were not terminated in their favor. Although there is some case law arguably to the contrary, *see Roesch v. Otarola*, 980 F.2d 850, 853–54 (2d Cir.1992), more recent decisions of the Court of Appeals have confirmed the traditional rule that favorable termination is not a required element of a false arrest claim, as opposed to a malicious prosecution claim. *See Weyant v. Okst*, 101 F.3d 845, 853–54 (2d Cir.1996), *citing Singer*, 63 F.3d at 118 (2d Cir.1995); *cf. Breen v. Garrison*, 169 F.3d 152, 152–54 (2d Cir. 1999). Accordingly, the fact that the criminal proceedings did not terminate in favor of the plaintiffs is not a sufficient basis for dismissing the plaintiffs' federal false arrest claim.

 Defendants Jaffe and Heller also argue that the § 1983 false arrest claims against them should dismissed because their actions were not taken under color of law. However, "[p]rivate persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 [claims]," even if the state actor himself is immune from liability. *Dennis v. Sparks*, 449 U.S. 24, 27–28, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). Here, the plaintiffs allege that defendants Jaffe, Heller and Neveloff wilfully caused defendant Driscoll, an Assistant District Attorney, to violate plaintiffs' rights by manipulating the evidence presented to the Grand Jury. *See, e.g.*, Amended Complaint ¶¶ 77, 97, 118, 121–23. Drawing every reasonable inference in favor of the plaintiffs, the Court concludes that the plaintiffs have, at least for present purposes, sufficiently pled the existence of joint action that warrants treating defendants Jaffe, Heller, and Neveloff as state actors for purposes of assessing plaintiffs' federal false arrest claim.

 As *Dennis* further makes clear, however, the state official participating in such joint action may himself be immune from personal liability, *id.*, and this is plainly true in the case of defendant Driscoll. The only well-pleaded allegations against Driscoll that rise above the level of negligence [6] relate entirely to actions taken by him in presenting the case to the Grand Jury and seeking the indictment and arrest warrant: "quasi-judicial" conduct that falls squarely within Driscoll's

**6.** The great majority of allegations relating to Driscoll's investigative (as opposed to quasi-judicial) conduct assert forms of negligence. *See, e.g.*, Amended Complaint ¶ 66. Negligence will not support a claim under § 1983. *Salim v. Proulx*, 93 F.3d 86, 92 (2d Cir.1996) (the assertion that "a state actor acted negligently does not state a deprivation of constitutional rights"); *accord Smith v. Gribetz*, 958 F.Supp. 145, 149 n. 3 (S.D.N.Y.1997); *cf. Doe v. New York City Dep't of Social Services*, 649 F.2d 134, 142 & n. 3 (2d Cir.1981). To the extent that the Amended Complaint contains any factual allegations of investigative misconduct that could conceivably be interpreted as rising above mere negligence, they concern Driscoll's alleged interference with the plaintiffs' right to counsel and are independently flawed for reasons set forth *infra*. To be sure, the Amended Complaint also in-cludes broad assertions that Driscoll acted intentionally or recklessly in connection with other investigatory activities, *see, e.g.* Amended Complaint ¶ 79, but these allegations are too vague, too conclusory, and too lacking in factual content to state a claim under the civil rights statutes. *See Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir.1994); *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.1987); *Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir.1978) (per curiam). Even under the liberal standards of notice pleading, a complaint must contain "specific allegations of fact indicating a deprivation of rights," not a mere "litany of general conclusions that shock but have no meaning." *Barr*, 810 F.2d 358, 363; *accord Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir.1994); *Ruderman v. Police Dep't of New York*, 857 F.Supp. 326, 330 (S.D.N.Y.1994).

absolute prosecutorial immunity. *See Powers v. Coe,* 728 F.2d 97, 104 (2d Cir. 1984); *see also Buckley v. Fitzsimmons,* 509 U.S. 259, 268, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) (actions performed by prosecutor in his role as an advocate for the state are entitled to absolute immunity); *Kalina v. Fletcher,* 522 U.S. 118, 118 S.Ct. 502, 510, 139 L.Ed.2d 471 (1997) (Scalia, J., concurring) (absolute immunity for the decision to seek an arrest warrant after filing an information); *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (absolute immunity for initiation of prosecution) *Barr v. Abrams,* 810 F.2d 358, 362 (2d Cir.1987) (absolute immunity for procuring arrest warrant). As a result, any claim against Driscoll in his personal capacity must be dismissed.

 Further, to the extent that plaintiffs' claims are directed against Driscoll in his official capacity, they are in essence claims against the state and as such are precluded by the Eleventh Amendment, *see Ying Jing Gan v. City of New York,* 996 F.2d 552, 536–37 (2d Cir. 1993), and fall outside the ambit of § 1983, *see Will v. Michigan Dep't of State Police,* 491 U.S. 58, 64, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (states are not "persons" liable under § 1983); *Ying,* 996 F.2d at 537 (same).[7]

Turning to the plaintiffs' other claims, *Count II,* which is purportedly brought under § 1983, is, like many other counts in the Amended Complaint, the sort of "shotgun pleading" that illustrates plaintiffs' utter disrespect for Rule 8, Fed.R.Civ.P. *See, e.g., Pelletier v. Zweifel,* 921 F.2d 1465,

1518 (11th Cir.1991). It sets forth a potpourri of vague and conclusory allegations that for the most part are not explicitly linked to any specific factual assertions, making it extremely difficult to discern the precise nature of the claim. Plaintiffs' equally obtuse memoranda of law only increase the uncertainty. Nonetheless, construing this melange most favorably to plaintiffs, Count II may arguably be said to raise two claims: first, that the plaintiffs were deprived of liberty and property interests without due process, *see* Pl. Br.Opp. Deft. Jaffe's Mot. ("Pl. Jaffe Br."), at 15–17; and second, that the defendants infringed plaintiffs' right to counsel, *see* Pl.Br.Opp. Deft. Driscoll's Mot., 17–19. Neither claim can survive a motion to dismiss.

 In order to bring a due process claim, a plaintiff must first identify a cognizable liberty or property interest. *See Narumanchi v. Board of Trustees of Conn. State Univ.,* 850 F.2d 70, 72 (2d Cir.1988). It is well established, however, that the interest on which plaintiffs here primarily rely—"business reputation," *see* Pl. Jaffe Br. at 15–17—falls outside the protection of the due process clause. *See, e.g., Siegert v. Gilley,* 500 U.S. 226, 233–34, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Paul v. Davis,* 424 U.S. 693, 712, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Cypress Insurance Co. v. Clark,* 144 F.3d 1435, 1437–38 (11th Cir.1998); *WMX Technologies v. Miller,* 80 F.3d 1315, 1319 (9th Cir.1996), *appeal dismissed en banc for lack of jurisdiction,* 104 F.3d 1133 (9th Cir.1997).[8]

---

**7.** Plaintiffs argue that Driscoll should be considered a municipal (rather than state) official with respect to his investigative conduct, which would bring him within the ambit of § 1983 and outside the protection of the Eleventh Amendment. Even if this were so, however, plaintiffs' official capacity claim would nevertheless be deficient because of the absence of any allegations that Driscoll's actions were the result of an official custom or policy, a prerequisite to § 1983 recovery against a municipality. *See Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Monell v. New York City Dept. of So-*

*cial Services,* 436 U.S. 658, 690–91 & n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993).

**8.** Plaintiffs support their contrary claim by citation to a case, *Little v. City of North Miami,* 805 F.2d 962 (11th Cir.1986), that is no longer good law on the point for which plaintiffs cite it and that, indeed, has been disavowed in this respect by the very court that decided it. *See Cypress Insurance,* 144 F.3d at 1437; *see also Townshend v. Hazelroth,* 875 F.Supp. 1293, 1301 (E.D.Mich.1995).

While plaintiffs also purport to rely on plaintiff MacPherson's alleged liberty interest in retaining certain handgun permits, *see* Pl. Jaffe Br. at 15; Amended Complaint ¶ 73, 113, plaintiffs have failed to plead even minimum facts showing that MacPherson was denied adequate process when the permits were revoked, relying instead on a bare, conclusory assertion that MacPherson's rights were violated. *See* Pl. Jaffe Br. at 15; *see* Amended Complaint ¶¶ 73, 113, 131. This entirely fails to state a claim. *See Yusuf v. Vassar College,* 35 F.3d 709, 713 (2d Cir.1994); *Barr,* 810 F.2d at 363; *Martin v. N.Y. State Dep't of Mental Hygiene,* 588 F.2d 371, 372 (2d Cir.1978) (per curiam).

Finally, while the Amended Complaint also alleges that plaintiffs were denied due process in the civil suit when the state court supposedly took their indictment into account in granting summary judgment to Jaffe on his unjust enrichment claim, *see* Amended Complaint ¶ 118, 121, this theory—mentioned nowhere in the sections of plaintiffs' briefs discussing Count II, *see* Pl. Jaffe Br., at 15–18; Pl. Driscoll Br., at 17–19; Pl. Heller Br., at 19–21, and therefore deemed abandoned—is grounded (if at all) on the absurd proposition that a litigant is denied due process merely because a court considers inadmissible evidence in arriving at a decision (as if the remedy of direct appeal were not available).[9]

Due process claims aside, Count II also purports to rely on supposed violations of the right to counsel. In essence, the allegation is that, during the period preceding plaintiffs' indictment, defendant Driscoll pressured Danny Pustovit (a co-defendant in the civil suit brought by defendant Jaffe) into discharging Irwin Popkin, the lawyer who was jointly representing the plaintiffs and Pustovit, and obtaining a different attorney. *See* Amended Complaint ¶¶ 61–64, 124–30. Apparently oblivious to the ethical constraints that might well have required Popkin to relinquish such joint representation, plaintiffs allege that Driscoll's alleged intimidation of Popkin violated their right to counsel by somehow interfering with their ability to mount an effective defense to the criminal investigation of their activities, *see id.* ¶¶ 124–25, 130. Quite aside from the fuzziness of this claim, it ignores the elementary fact that, in the context of a criminal investigation, no right to counsel attaches prior to either the onset of custody, *see Miranda v. Arizona,* 384 U.S. 436, 470–473, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), or the commencement of formal adversary proceedings, *see Davis v. United States,* 512 U.S. 452, 456–58, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994); *In re Grand Jury Subpoena Served Upon Doe,* 781 F.2d 238, 244 (2d Cir.1986) (en banc). Since plaintiffs' allegations concern preindictment and pre-custodial investigatory conduct, *see* Amended Complaint ¶¶ 61–64, 125, no denial of the right to counsel is conceivably implicated.

*Counts III and IV,* brought on behalf of plaintiff Coakley, purport to assert claims under 42 U.S.C. § 1985(2) and 1985(3), which provide causes of action for plaintiffs injured as a result of a conspiracy to deny "the equal protection of the laws." 42 U.S.C. § 1985(2), 1985(3). In order to state a claim under either provision, a plaintiff must adequately plead discrimination against a protected class, *see Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971) (§ 1985(3)); *Gagliardi v. Village of Pawling,* 18 F.3d 188, 194 (2d Cir.1994)

---

**9.** Count II further alleges that the plaintiffs' "substantive due process" rights were violated; Amended Complaint ¶ 119, but this theory of recovery likewise appears to have been abandoned, since it is mentioned nowhere in the sections of the plaintiffs' briefs discussing Count II, *see* Pl. Jaffe Br., at 15–18; Pl. Dris-coll Br., at 17–19; Pl. Heller Br., at 19–21. In any event, it is deficient because the plaintiffs' conclusory allegations do not establish the sort of extreme misconduct actionable under a substantive due process theory, *see United States v. Chin,* 934 F.2d 393, 398 (1991).

(§ 1985(3)); *Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*, 7 F.3d 1085, 1088 (2d Cir.1993); *Temple of the Lost Sheep, Inc. v. Abrams*, 930 F.2d 178, 185 (2d Cir.1991) (§ 1985(3)); *Bretz v. Kelman*, 773 F.2d 1026, 1029–30 (9th Cir.1985) (en banc) (§ 1985(2)); *cf. Dickerson v. State Farm Casualty Co.*, 95 Civ. 1073, 1996 WL 445076, *4 (S.D.N.Y.1996) (noting that in the § 1981 context, a complaint "must allege specific facts supporting both the existence of the racial animus and the inference of a link between the adverse treatment and the racial animus.").

Here, while plaintiff Coakley asserts in conclusory fashion that the defendants conspired to deprive her of her constitutional rights because of her gender, *see* Amended Complaint ¶¶ 136, 138, 144–46, she fails to allege a single specific fact that reasonably supports such a claim. The closest she comes is her allegation that defendant Driscoll pursued a criminal investigation of her activities in connection with the Karimi home while ignoring co-defendant Jaffe's illegal subletting of the same property. *See id.* ¶ 138. But quite aside from the lack of any factual allegation supporting the claim that this alleged distinction was motivated by gender animus, Coakley and Jaffe cannot even be said to have been similarly situated, since it is plain from the Amended Complaint that they were on opposite sides of the transaction giving rise to the criminal investigation and to Coakley's eventual indictment for fraud. By contrast, the only male individual who was genuinely similarly situated—plaintiff MacPherson—experienced, according to the Amended Complaint, exactly the same treatment that

Coakley did. Accordingly, Counts III and IV must be dismissed.

▮ Likewise, *Count V* of the Amended Complaint, brought under 42 U.S.C. § 1986, must also be dismissed, because a " § 1986 claim must be predicated upon a valid § 1985 claim." *Mian*, 7 F.3d at 1088; *accord Gagliardi*, 18 F.3d at 194.

▮ *Count VIII* alleges abuse of process under state law. Specifically, the Amended Complaint alleges that the defendants caused the issuance of Grand Jury subpoenas, indictments, and arrest warrants,[10] *see* Amended Complaint ¶¶ 59, 67, 169, 172, for the improper collateral purpose of influencing the civil proceedings brought by defendant Jaffe, *see id.* ¶¶ 58, 169, with the result that Jaffe won a tainted and incorrect judgment based on inadmissible evidence, *see id.* ¶¶ 81–2, 169. These facts, if proven, would establish the three essential elements of an abuse of process claim—regularly issued process, an intent to do harm without justification, and misuse of process for a collateral purpose, *see Curiano v. Suozzi*, 63 N.Y.2d 113, 116, 480 N.Y.S.2d 466, 469 N.E.2d 1324 (N.Y.1984). Accordingly, the plaintiffs abuse of process claim survives as to defendants Jaffe, Heller and Neveloff.

▮ As to defendant Driscoll, however, the claim must be dismissed on the ground of immunity. A prosecutor enjoys much the same immunity from state law claims as he does from claims under § 1983—including absolute immunity from all claims based on actions taken in a quasi-judicial capacity.[11] *See Hischfeld v. City of New York*, 253 A.D.2d 53, 686 N.Y.S.2d 367, 370–71 (1st Dep't.1999).

---

10. Parenthetically, the Court notes that the plaintiffs' allegation in Count VIII that arrest warrants were issued is in tension with their suggestion earlier in the pleading that warrants may not have been issued. *Compare* Amended Complaint ¶ 68 *with id.* ¶ 172.

11. Prosecutorial immunity is, if anything, even broader under New York state law than it is under federal law. While a prosecutor receives only qualified immunity from § 1983 claims where his conduct is investigative in

nature, *see Buckley*, there is some authority for the proposition that a prosecutor is entitled to absolute immunity from state law claims based on investigatory conduct. *See Rodrigues v. City of New York*, 193 A.D.2d 79, 602 N.Y.S.2d 337, 342 (1st Dep't 1993); *Schanbarger v. Kellogg*, 35 A.D.2d 902, 315 N.Y.S.2d 1013, 1015 (3d Dep't 1970); *Manceri v. City of New York*, 12 A.D.2d 895, 209 N.Y.S.2d 915, 917 (1st Dep't 1961) (per curiam).

Here, the actions on which the plaintiffs' abuse of process claim is premised—procuring an indictment, issuing Grand Jury subpoenas, and obtaining an arrest warrant—are, as previously noted, quasi-judicial, absent circumstances not here alleged.[12] *See Imbler,* 424 U.S. at 431, 96 S.Ct. 984 (1976); *Barr,* 810 F.2d at 362; *Powers,* 728 F.2d at 104; *Hirschfeld,* 253 A.D.2d 53, 686 N.Y.S.2d 367, 369–71. Accordingly, they cannot support the plaintiffs' abuse of process claim against Driscoll.

*Count IX,* which is asserted only against defendant Jaffe, alleges breach of contract in connection with the sublease of the Karimi home. Quite aside from the fact that Jaffe has cited not a single legal authority in support of his motion to dismiss this count, his motion must be denied because the arguments he advances are either unconvincing as a matter of law or require development of the facts inappropriate to a motion to dismiss. To the extent, for example, that Jaffe argues that the state court adjudication terminating the sublease necessarily bars any breach of contract action here, he ignores the fact that unless the lease was declared void *ab initio* (which is unclear from the pleadings), such an action might properly proceed where, as here, the plaintiff alleges that a breach took place prior to the termination. Moreover, the Court declines—in light of Jaffe's failure to meaningfully brief the issue—to exercise its discretion to depart from the general rule that a res judicata defense is to be considered only after it is pleaded in a defendant's answer, *see* Fed.R.Civ.P. 8(c); *Day v. Moscow,* 955 F.2d 807, 811 (2d Cir.1992).

*Count X,* alleging violations of the New York State Constitution, contains little more than the vague and conclusory allegation that the defendants violated the equal protection, search and seizure, and due process provisions of the New York State constitution "by their conjoined conspiratorial conduct as described above." Amended Complaint ¶ 181. As a threshold matter, this allegation is too vague and conclusory to state a claim and must be dismissed on that basis alone. *Cf. Davidson,* 32 F.3d at 31. Moreover, to the extent that the plaintiffs' claim is predicated on violations of the equal protection and due process clauses of the state constitution, it fails for the reasons discussed above in connection with the plaintiffs' federal constitutional claims under § 1983. So far as any issues raised by Count X are concerned, the New York State Constitution's guarantees of equal protection and due process are virtually coextensive with those of the U.S. Constitution, *see Central Savings Bank v. City of New York,* 280 N.Y. 9, 10, 19 N.E.2d 659 (1939) (per curiam); *Manshul Constr. Corp. v. New York City Constr. Auth.,* 192 A.D.2d 659, 596 N.Y.S.2d 475, 476 (2d Dep't 1993); *Cucchi v. New York City Off–Track Betting Corp.,* 818 F.Supp. 647, 655 n. 11 (S.D.N.Y.1993); accordingly, the conclusion, *supra,* that the plaintiffs' federal equal protection and due process rights were not violated dictates the conclusion that the plaintiffs' parallel rights under the state constitution were also not infringed, *cf. Streetwatch v. National Railroad Passenger Corp.,* 875 F.Supp. 1055, 1062–63 & n. 1 (S.D.N.Y.1995).

The plaintiffs' claim under the search and seizure clause of the state constitution is likewise deficient. Although the New York Court of Appeals has recognized a "narrow" private right of action for violations of the search and seizure provision of the state constitution, *Brown v. State,* 89 N.Y.2d 172, 192, 652 N.Y.S.2d 223, 674 N.E.2d 1129 (1996), it is unavailable where an alternative remedy will adequately protect the interests at stake, *see Remley v. State,* 174 Misc.2d 523, 665

---

12. The plaintiffs have not alleged that Driscoll personally participated in effectuating their arrest, *see Barr,* 810 F.2d at 362, issued Grand Jury subpoenas before a Grand Jury was convened, *see Rodrigues,* 602 N.Y.S.2d at 342, or otherwise acted in a manner that might warrant treating his conduct in procuring indictments, subpoenas, and arrest warrants as anything but quasi-judicial in nature.

N.Y.S.2d 1005, 1008–1009 (Ct.Cl.1997); *cf. Wahad v. Federal Bureau of Investigation,* 994 F.Supp. 237, 240 (S.D.N.Y.1998). Here, the plaintiffs have stated a viable Fourth Amendment (false arrest) claim under § 1983. Since any violation of the plaintiffs right to be free of unreasonable searches and seizures can be vindicated through this claim, it follows that the plaintiffs have no private right of action under the state constitution. Accordingly, the plaintiffs' claim for violations of the New York State Constitution must be dismissed.

■■■ *Count XI,* a negligence claim, must also be dismissed. The gravamen of the claim is that the plaintiffs were subject to arrest and prosecution as a result of the defendants' careless conduct. *See* Amended Complaint ¶ 186. Since a plaintiff may not recover under general negligence principles for a claim that a defendant failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution, *see Bernard,* 25 F.3d at 102, *citing Boose v. City of Rochester,* 71 A.D.2d 59, 421 N.Y.S.2d 740, 744 (4th Dep't 1979); *Morales v. United States,* 961 F.Supp. 633, 638 (S.D.N.Y.1997); *Dirienzo v. United States,* 690 F.Supp. 1149, 1155 (D.Conn. 1988) (construing New York law); *Remley,* 665 N.Y.S.2d at 1008; *Shea v. County of Erie,* 202 A.D.2d 1028, 609 N.Y.S.2d 473 (4th Dep't 1994), this is not a viable theory of recovery.[13]

■■■ In summary, and for the foregoing reasons, all of the plaintiffs' claims

against all defendants are dismissed with prejudice [14] *except:* (1) plaintiffs' claim against defendants Jaffe, Heller and Neveloff for false arrest under 42 U.S.C. § 1983; (2) plaintiff's state law claim against Jaffe, Heller and Neveloff for abuse of process; and (3) plaintiffs' claim against defendant Jaffe for breach of contract.

SO ORDERED.

---

**13.** Although this rule has generally been applied where a plaintiff seeks to recover against a governmental official or entity, it is equally applicable to claims brought against private citizens. Regardless of the public or private character of a particular defendant, the policy of encouraging criminal proceedings against the guilty is furthered by requiring a plaintiff to establish the elements of false arrest or malicious prosecution—elements which serve to "permit damages only under circumstances in which the law regards ... imprisonment or prosecution as improper and unjustified," *Boose,* 421 N.Y.S.2d at 744.

**14.** Because the general deficiencies in plaintiffs' pleadings were called to their attention at the time their original Complaint was dismissed without prejudice, their failure to cure most of these deficiencies in their Amended Complaint, coupled with the futility of granting them leave to replead their legally deficient theories of liability, more than warrants dismissal with prejudice. *See Denny v. Barber,* 576 F.2d 465, 471 (2d Cir.1978); *DeFalco v. Dirie,* 923 F.Supp. 473 (S.D.N.Y.1996); *see also Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (leave to amend need not be granted if it would serve no purpose).