**JOHN GIL CONSTRUCTION, INC., Plaintiff,**

v.

**Milo RIVERSO, an individual, the New York City School Construction Authority, New York City Off–Track Betting Corporation, the Department of Investigation for the City of New York and John Does 1–10, Defendants.**

No. 99 Civ. 6112(SAS).

United States District Court, S.D. New York.

April 6, 2000.

J. Garth Foley, New York City, for plaintiff.

Michael Barron, Assistant Corporation Counsel, City of New York, New York City, for defendants.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiff John Gil Construction, Inc. ("JGC") brings this action, pursuant to 42 U.S.C. § 1983, against defendants Milo Riverso, The New York City School Construction Authority (the "SCA"), New York City Off–Track Betting Corporation ("OTB") and The Department of Investigation for the City of New York ("DOI").[1] Plaintiff alleges that defendants violated its constitutional rights to due process and equal protection of the laws in connection with (i) a criminal investigation of plaintiff by OTB and DOI; and (ii) the SCA's suspension of plaintiff's prequalified bidder status pending favorable disposition of the OTB/DOI investigation. Plaintiff also asserts supplemental state law claims for breach of contract and tortious interference with contractual relationships.

On August 2, 1999, plaintiff moved this Court for a temporary restraining order and a preliminary injunction compelling the SCA, among other things, to revoke its suspension of plaintiff's prequalified bidder status. By opinion dated September 23, 1999, I denied plaintiff's request for preliminary relief. See John Gil Const., Inc. v. Riverso, 72 F.Supp.2d 242 (S.D.N.Y. 1999).

Defendants now move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss plaintiff's third amended complaint for failure to state a claim upon which relief may be granted. For the reasons that follow, defendants' motion is granted in its entirety.

## I. Applicable Legal Standard

Dismissal of a complaint for failure to state a claim pursuant to Rule 12(b)(6) is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Harris v. City of N.Y., 186 F.3d 243, 247 (2d Cir.1999).

"The task of the court in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998) (internal quotations omitted). Thus, to properly rule on such a motion, the court must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the nonmovant's favor. See Harris, 186 F.3d at 247. Nevertheless, "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996) (internal quotations omitted).

In deciding a Rule 12(b)(6) motion, the district court must generally limit itself to facts stated in the complaint, documents attached to the complaint as exhibits or documents incorporated in the complaint by reference. See Dangler v. New York City Off Track Betting Corp., 193 F.3d 130, 138 (2d Cir.1999). However, the Court may also consider matters of public record, see Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir.1998), cert. denied, 525 U.S. 1103, 119 S.Ct. 868, 142 L.Ed.2d 770 (1999), as well as "documents either in plaintiff['s] possession or of which plaintiff[ ] had knowledge and relied on in bringing suit", Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir.1993). See also Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir.1991) (finding that on motion to dismiss, district courts may consider documents of which plaintiff had actual notice and which were integral to its claim even though those documents were not referred to or incorporated in the complaint).

## II. Background

### A. Factual Background

The following facts are drawn from the third amended complaint ("Complaint")

---

1. Although plaintiff also purports to bring this action against John Does 1–10, it brings no claims against those defendants.

and are presumed true for purposes of this motion. However, because the background of this case is set forth at length in the September 23 opinion, it is repeated only summarily here.[2]

Plaintiff JGC is a New York construction company that derives its revenue from government building contracts. Complaint ¶ 4. Defendant the SCA is a public benefit corporation with broad powers to oversee the construction and rehabilitation of New York City's public schools. *Id.* ¶ 47.[3] The SCA has statutory authority to prescreen and prequalify contractors who wish to bid for school construction contracts. *Id.* ¶ 49 (citing PAL § 1734). The SCA also has authority to revoke a contractor's prequalified bidder status in the event that contractor becomes the subject of a criminal investigation. *Id.* ¶¶ 50, 105.[4]

In August 1995, JGC applied and was selected to be an SCA prequalified bidder. *Id.* ¶ 43. In June 1996, JGC was awarded a contract by another city agency, defendant OTB. *Id.* ¶ 21. Two years later, in September 1998, OTB and JGC became involved in a billing dispute over payment for services rendered. *Id.* ¶¶ 35–36. In October 1998, OTB notified JGC that JGC was being investigated by the Inspector General for OTB and defendant DOI. *Id.* ¶ 38. Although JGC claims that it has never received any information from OTB or DOI regarding the substance of the allegations against it, *see id.* ¶¶ 1, 164, those allegations apparently involve billing irregularities stemming from JGC's 1996 contract with OTB, *see* 3/30/99 letter from Kenneth D. Litwack, plaintiff's attorney, to SCA, Ex. 12 to 7/30/99 Affidavit of John Gil ("Gil Aff.").[5]

In a letter dated February 2, 1999, the SCA gave JGC notice that because the company was under criminal investigation by OTB and DOI, the SCA could, pursuant to its rules, suspend JGC from working for the SCA until there was a favorable disposition of the investigation. Complaint ¶ 51. The letter offered JGC an opportunity to meet with SCA officials to dispute that it was the subject of a criminal investigation by OTB and DOI or to bring mitigating circumstances to the SCA's attention. *See* 2/2/99 letter from the SCA to John Gil, Ex. 10 to Gil Aff. JGC met with SCA authorities on March 5. Complaint ¶ 52. At the meeting, JGC asked the SCA to postpone any decision regarding JGC's prequalified status, so that JGC could meet with OTB

---

**2.** Although this Court's prior opinion cites to plaintiff's original complaint, the factual allegations in the original complaint and the third amended complaint are virtually identical.

**3.** The SCA was created pursuant to New York Public Authority Law §§ 1725 et seq. [hereinafter "PAL § __"]. At all relevant times, defendant Riverso was president of the SCA. Complaint ¶ 5.

**4.** Pursuant to PAL § 1734, the SCA promulgated guidelines governing the prequalification process for school contractors. *See* Guidelines for Qualification and Evaluation of Contractors, Subcontractors, Consultants, Vendors and Suppliers for Contracts on All Phases of Construction, Reconstruction, Improvement or Rehabilitation of New York City Schools ("Guidelines"), N.Y. Comp.Codes R. & Regs. tit. 21, § 9600.1 et seq. [hereinafter "21 NYCCRR § __"]. Among other things, the Guidelines require companies to demonstrate "integrity and ethics" in their business prac-

tices. *See* 21 NYCCRR § 9600.3(d). Accordingly, under section 9600.3(d)(2) of the Guidelines, a contractor may be "precluded from working for the authority until there is a favorable resolution of . . . a pending criminal investigation." 21 NYCCRR § 9600.3(d)(2).

**5.** John Gil is the president and founder of JGC. Complaint ¶ 57. Although Gil submitted his affidavit in support of plaintiff's motion for preliminary injunction, materials attached to that affidavit are properly considered on defendants' motion to dismiss because those materials were clearly "in plaintiff's possession." *Brass*, 987 F.2d at 150. Moreover, because plaintiff moved for preliminary relief at the same time it commenced this action, there is no question that plaintiff had knowledge of the materials attached to the Gil affidavit prior to bringing suit and that it relied upon them in bringing suit. *See id.; see also supra* Part I. Finally, the March 30 letter from Litwack to the SCA, although not clearly identified, is referred to in paragraph 53 of the Complaint. Complaint ¶ 53.

officials. *Id.* Although the SCA agreed to postpone its decision for several weeks, JGC failed to provide the authority with any additional information regarding the OTB/DOI investigation. *See* 3/29/99 letter from SCA to Litwack, Ex. 11 to Gil Aff. On June 1, the SCA sent JGC a letter suspending the company from working for the SCA and removing the company from the list of prequalified SCA bidders. Complaint ¶ 59.

## B. Procedural Background

On August 2, 1999, JGC commenced the instant action and sought a temporary restraining order and a preliminary injunction compelling the SCA to revoke (i) its suspension of plaintiff's prequalified bidder status; (ii) its suspension of plaintiff's right to work on SCA projects; and (iii) its award to others of two contracts upon which plaintiff alleged it was the lowest bidder.[6] While its motion for preliminary relief was pending, plaintiff filed an amended complaint dated August 24 and a second amended complaint dated September 14.

6. Plaintiff did not seek preliminary relief with respect to defendants OTB or DOI. *See John Gil Const.*, 72 F.Supp.2d at 247 n. 4. In fact, plaintiff failed to properly serve OTB and DOI with the original complaint and the amended complaint. Thus, neither OTB nor DOI appeared in this action until plaintiff properly served them with the second amended complaint on September 14, 1999.

7. I note that on October 22, 1999, plaintiff appealed this Court's denial of its request for a preliminary injunction to the Second Circuit. Plaintiff's pending appeal does not, however, divest this Court of jurisdiction to hear defendants' motion to dismiss. *See New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1350 (2d Cir.1989) (where party appeals from interlocutory order denying preliminary injunction, "the matter does not leave the district court, but proceeds there on the merits, unless otherwise ordered").

I also note that on February 3, 2000, Gil, as president of JGC, was indicted in the Eastern District of New York on thirteen counts of fraud against OTB in connection with the 1996 OTB/JGC contract. *See United States v. Gil*, Indictment No. 00 Cr. 100 (E.D.N.Y. Feb. 3, 2000), attached as Ex. A to Defendants' Reply Memorandum in Support of Motion to

■ On September 23, I denied plaintiff's motion for preliminary relief. On November 15, plaintiff filed a third amended complaint. Defendants moved to dismiss the third amended complaint on December 17.[7]

## C. Allegations of the Complaint

For purposes of this motion, I construe plaintiff's Complaint as asserting the following six claims for relief.[8] Claim one alleges that by suspending JGC's prequalified bidder status, the SCA and Riverso deprived JGC of property and liberty interests in violation of the Due Process Clauses of the United States Constitution and the New York State Constitution.[9] Claim two alleges that the actions of the SCA and Riverso also constitute a violation of the federal Equal Protection Clause, because the SCA and Riverso failed to suspend other contractors who were the subjects of pending criminal investigations. Plaintiff asserts that such alleged selective suspension was racially motivated.[10]

Dismiss the Third Amended Complaint ("Def. Reply Mem."). The indictment is a matter of public record and thus, to the extent it is relevant, it may be considered on defendants' motion to dismiss. *See Pani*, 152 F.3d at 75.

8. The Court must "construe" the allegations of the Complaint due to the poor quality of plaintiff's submissions. Each submission has been more convoluted and obscure than the last, forcing the Court to wade through hundreds of paragraphs filled with egregious misspellings, undecipherable legal citations and sentence fragments, not to mention confusing and half-articulated legal theories.

9. Although the Complaint cites §§ 1 and 7 of the New York State Constitution, *see* Complaint ¶¶ 85, 167, I presume plaintiff intends to cite § 6 which is the state Due Process Clause. *See* N.Y. Const. art. I, § 6. Despite the fact that this error was noted in my September 23 opinion, *see John Gil Const.*, 72 F.Supp.2d at 249 n. 9, plaintiff's counsel failed to correct the mistake in his subsequent November 12 filing.

10. According to the Complaint, Gil is of "Spanish descent." Complaint ¶ 64. The Complaint also alleges that in July 1995, the

Claim three alleges that section 9600.3(d)(2) of the Guidelines is unconstitutional because it violates both procedural and substantive due process.

Claim four alleges that by conducting a criminal investigation of plaintiff for more than a year, and by failing to inform plaintiff of the nature of the charges against it, OTB and DOI deprived plaintiff of property and liberty interests in violation of the Due Process Clauses of the United States Constitution and the New York State Constitution. Claim five alleges that the actions of OTB and DOI also constitute a violation of the federal Equal Protection Clause because other similarly situated OTB contractors were not targeted for criminal investigation by OTB and DOI.

Claim six includes supplemental state law claims against all defendants for breach of contract and tortious interference with contractual relationships. Pursuant to these six claims, plaintiff seeks more than $200 million in compensatory and punitive damages. Plaintiff also seeks a judgment declaring section 9600.3(d)(2) unconstitutional.[11]

### III. Discussion

In their motion to dismiss, defendants argue that this Court's September 23 opinion "appear[s] to require dismissal of certain causes of action in the complaint." Defendants' Memorandum in Support of Motion to Dismiss Third Amended Complaint ("Def.Mem.") at 1. Specifically, defendants contend that plaintiff's due process and equal protection claims are foreclosed by my prior findings. *See id.*

New York State Department of Economic Development certified plaintiff as a minority contractor. *Id.* ¶ 18.

11. Although the Complaint makes passing reference to Title VII, *see* Complaint ¶¶ 1–2, it fails to set forth a single factual or legal allegation that would support a Title VII claim. In addition, plaintiff brings a "cause of action for misconduct of a government official" against Riverso. *Id.* ¶¶ 132–47. However, plaintiff fails to identify any legal basis for such a claim.

at 2–5. In addition, defendants assert that upon dismissal of plaintiff's federal claims, this Court should decline to exercise supplemental jurisdiction over plaintiff's remaining state law claims. *See id.* at 5–6. In the alternative, defendants argue that plaintiff's state law claims are legally insufficient. *See id.* at 6–8.

### A. Constitutional Claims Against the SCA and Riverso [12]

#### 1. Due Process

■ In order to prevail on a due process claim, plaintiff must identify a constitutionally protected property or liberty interest and demonstrate that the state has deprived it of that interest without due process of law. *See Local 342 v. Town Bd. of Huntington,* 31 F.3d 1191, 1194 (2d Cir.1994).[13] Plaintiff claims that it has a constitutionally protected property interest in its status as an SCA prequalified bidder. Complaint ¶ 90. The SCA allegedly violated that property interest when it suspended plaintiff's prequalified status and precluded plaintiff from working on SCA projects. *Id.* ¶¶ 93, 97.

In the September 23 opinion, I analyzed plaintiff's property-interest claim and found that

> JGC ... has no property interest in contracting with the SCA or any other public entity. Nor does JGC have a property interest in its status as an SCA prequalified bidder. JGC is not "entitled" to its status as a prequalified bidder; that status is impermanent and can be revoked at the discretion of the SCA.

12. For purposes of analyzing plaintiff's constitutional claims against the SCA and Riverso, both defendants are referred to collectively as "the SCA".

13. Because the language of the federal and state due process clauses is identical, my analysis of the sufficiency of plaintiff's federal due process claims applies with equal force to the sufficiency of plaintiff's state due process claims.

**352**

*John Gil Const.*, 72 F.Supp.2d at 252. Accordingly, and for the reasons set forth in the September 23 opinion, plaintiffs' property-interest due process claim against the SCA is dismissed as a matter of law.

Plaintiff also asserts a liberty interest in its good name and reputation as a government contractor. Complaint ¶¶ 91–92. Plaintiff contends that its reputation has been damaged by the suspension of its SCA prequalified status and the publication of that suspension on the city's Vendor Information Exchange System ("VENDEX"). *Id.* ¶ 98.[14]

■■ Corporate entities such as government contractors have a protected liberty interest in their good name and reputation. If government actors damage that reputation by disseminating defamatory information without due process, the injured company may be entitled to relief. *See Kelly Kare, Ltd. v. O'Rourke*, 930 F.2d 170, 177 (2d Cir.1991). However, "[t]o prevail on such a liberty-interest claim, a plaintiff must establish that the information was stigmatizing, false, and publicized by the state actor." *Id.; see also S & D Maintenance Co., Inc. v. Goldin*, 844 F.2d 962, 968 (2d Cir.1988).

■■ Like plaintiff's property-interest due process claim, plaintiff's liberty-interest due process claim was thoroughly analyzed in this Court's prior opinion which reached the following conclusion:

[T]here is no question that suspension by a New York City agency—and publication of that suspension on VENDEX—is stigmatizing and damaging to a public contractor desiring to do business with other city, state and federal agencies. However, to adequately allege that such damage rises to the level of a constitutional deprivation of liberty, JGC must demonstrate not just that the suspension by the SCA harmed its reputation, but that the SCA publicized false information about the company. This plaintiff fails to do.

*John Gil Const.*, 72 F.Supp.2d at 253. Specifically, plaintiff's sole allegation is that the SCA publicized and/or reported to VENDEX its suspension of plaintiff's prequalified bidder status. Complaint ¶ 98. However, any statement by the SCA regarding its suspension of plaintiff pending the outcome of a criminal investigation is a statement of undisputed fact; it is not comprised of any "false information" about the company. Therefore, and for the reasons expressed in the September 23 opinion, plaintiff's liberty-interest due process claim against the SCA must also be dismissed as a matter of law.[15]

**2. Equal Protection**

In the September 23 opinion, I concluded that plaintiff's equal protection claim against the SCA was legally insufficient because plaintiff failed to allege that it was treated differently from other "similarly

---

14. VENDEX is a publicly accessible database of all vendors who wish to do business with the City of New York. Under the City Charter, "any finding of nonresponsibility by an agency must be reported to the VENDEX", and agencies "must check the VENDEX for adverse entries regarding bidders before awarding a contract." *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 878 (2d Cir.1996). Similarly, contractors wishing to bid on city contracts must complete VENDEX Questionnaires. *See* N.Y. City R. & Regs., tit. 9, § 4–02. The Questionnaires seek background information regarding the contractor and its principals "so as to assist contracting officers in making the determination of responsibility." *Id.*

15. The September 23 opinion further found that even assuming plaintiff adequately alleged a protected property or liberty interest, and that the SCA deprived it of that interest, plaintiff was "likely afforded all the process it was due." *John Gil Const.*, 72 F.Supp.2d at 254. In particular, plaintiff was afforded both notice of the proposed SCA suspension and an opportunity to contest that suspension. *See id.* at 255. Plaintiff also had a viable post-deprivation remedy in the form of an Article 78 proceeding in New York state court. *See id.* The availability of adequate process provides an alternative ground for dismissal of plaintiff's due process claims against the SCA.

situated" contractors: "JGC does not allege—as it must—that the SCA learned that these contractors were the subjects of pending criminal investigations and failed to suspend their prequalified bidder status." *John Gil Const.*, 72 F. Supp.2d at 257. In addition, my prior opinion found that plaintiff failed to adequately allege that "the SCA intended to discriminate against JGC because of its race." *Id.*

In an attempt to cure these defects, plaintiff now alleges: "Upon information and belief, other firms including Precision Mechanical have been under criminal investigations for various allegations involving public contracts, but have not been suspended or otherwise precluded from conducting business with the SCA during the pendency of the investigation." Complaint ¶ 94. Plaintiff also contends that "[u]pon information and belief, plaintiff has been suspended from working with the SCA based upon racially discriminatory reasons and/or for reasons of malicious or bad faith intent to injure plaintiff." *Id.* ¶ 95.

■ Plaintiff's attempts to cure its equal protection claim are unavailing. To begin, plaintiff's assertions of selective enforcement and racial animus are wholly conclusory and unaccompanied by any supporting factual allegations. Such vague and speculative statements are insufficient to state a claim under either the Equal Protection Clause or 42 U.S.C. § 1983. *See, e.g., Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.1987) ("[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights,

instead of a litany of general conclusions that shock but have no meaning."); *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir.1987) ("[I]t is well settled that to state a civil rights claim under § 1983, a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983."); *see also Posr v. Court Officer Shield # 207*, 180 F.3d 409, 419 (2d Cir.1999) (finding allegation of § 1985 conspiracy to violate plaintiff's equal protection rights insufficient where plaintiff asserted "racial motivation" but failed to "allege facts sufficient to support a conclusion of race-based animus", such as an allegation that defendants made verbal references to plaintiff's race or that they improperly treated other members of plaintiff's race).

■ More fundamentally, however, plaintiff fails to assert that these "other firms" which the SCA did not suspend are nonminority contractors. *See United States v. Armstrong*, 517 U.S. 456, 465, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) (in selective enforcement claim based on race, plaintiff must allege that "similarly situated individuals of a different race" than plaintiff were treated differently than plaintiff). Indeed, plaintiff fails to include any information with respect to the race or ethnicity of other alleged similarly situated contractors. As a result of these deficiencies, plaintiff's equal protection claim against the SCA is dismissed for the reasons stated above and in my September 23 opinion.[16]

---

**16.** In their motion to dismiss, defendants attack the sufficiency of plaintiff's equal protection claim by submitting an affidavit from an SCA official which states that the SCA has never allowed a contractor under criminal investigation to maintain its SCA prequalified bidder status. *See* Def. Mem. at 3–4; 12/17/99 Affidavit of Andrew Yosha, Director of Operations in the SCA's Contract Administration Department, Ex. C to Defendants' 12/17/99 Notice of Motion. Submission of such affidavits is improper at the Rule

12(b)(6) stage, and I have not considered the Yosha affidavit in resolving the instant motion.

In a supplemental response to defendants' motion to dismiss, plaintiff has also submitted an affidavit together with two internal SCA memoranda. *See* 3/27/00 Affidavit of Jim Luckstone, former SCA Contract Management Specialist, attached to Plaintiff's Supplemental Reply in Opposition to Defendant's [sic] Motion to Dismiss Plaintiff's Third Amended

## B. Constitutionality of Section 9600

In claim three of the Complaint, plaintiff alleges that section 9600.3(d)(2) of the Guidelines is unconstitutional because it violates both procedural and substantive due process. Although this claim was not specifically addressed in the September 23 opinion, it is foreclosed by my prior findings.

 Section 9600.3(d)(2) permits the SCA to preclude contractors from working for the authority "until there is a favorable resolution of . . . a pending criminal investigation." 21 NYCCRR § 9600.3(d)(2); *see also supra* note 4. To succeed on its procedural due process challenge to section 9600.3(d)(2), plaintiff must establish that the statute necessarily impinges a protected property or liberty interest. *See Sanitation & Recycling Indus. v. City of N.Y.*, 107 F.3d 985, 995 (2d Cir.1997). However, as set forth *supra* Part III.A.1., government contractors have no property interest in contracting with the SCA. Nor do government contractors have a property interest in their status as prequalified SCA bidders.

Similarly, although government contractors have a liberty interest in their good name and reputation, section 9600.3(d)(2) does not, on its face, deprive contractors of that important interest. Section 9600.3(d)(2) merely permits the SCA to preclude contractors that are the subject of criminal investigations from working for

Complaint ("Pl.Reply"); 7/8/96 Memorandum from Thomas D. Thacher II, Vice President and Inspector General of SCA, to Leonard C. Supp, Interim President and CEO of SCA, Ex. A to Pl. Reply; 2/1/96 Memorandum from Thacher to Barry E. Light, President and CEO of SCA, Ex. B to Pl. Reply. Plaintiff contends that the affidavit and memoranda "identify other contractors that worked for the SCA despite ongoing criminal investigations." Pl. Reply ¶ 7.

Like the Yosha affidavit, submission of the Luckstone affidavit and supporting memoranda is improper at the Rule 12(b)(6) stage, and I have not considered these materials in connection with the current motion. I have, however, reviewed these materials in considering whether to grant plaintiff leave to

the authority; it does not provide for the publication of false and defamatory information regarding those companies.

 Substantive due process protects those rights that are "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Local 342 v. Town Bd. of Huntington*, 31 F.3d 1191, 1196 (2d Cir.1994) (internal quotations omitted). In addressing the possible merits of any substantive due process claim by plaintiff against the SCA, the September 23 opinion found that

[a]lthough there is no doubt that plaintiff's concerns regarding its ability to contract with city, state and federal agencies together with its interest in protecting its good name and reputation are important and nontrivial, those concerns "simply are not sufficiently weighty to warrant their protection under the substantive due process rubric." *Empire Transit Mix, Inc. v. Giuliani*, 37 F.Supp.2d 331, 340 (S.D.N.Y.1999) (finding that city's de facto debarment of concrete supplier from working on city contracts did not violate substantive due process). Put another way, plaintiff cannot show that the SCA's actions are so " 'conscience-shocking [ ] or oppressive in a constitutional sense' " that they threaten fundamental notions of liberty and justice. *See Catanzaro v. Weiden*, 188 F.3d 56, 64 (2d Cir.1999) (quoting

amend its equal protection claim. I find that such an amendment would be futile because the alleged incidents of nonenforcement referred to by Luckstone and supposedly demonstrated by the memoranda, even if fully pleaded in the Complaint, are not sufficient to sustain an equal protection claim against the SCA. *First,* the alleged incidents of nonenforcement occurred in 1996—a wholly different time-period than the time-period at issue here. *Second,* and more important, a close reading of the Luckstone affidavit and supporting memoranda makes clear that the contractors referred to in those documents were not the subjects of pending criminal investigations, and thus they were not "similarly situated" to plaintiff.

*Kaluczky v. City of White Plains,* 57 F.3d 202, 211 (2d Cir.1995)).

*John Gil Const.,* 72 F.Supp.2d at 256. It is for precisely these reasons that plaintiff cannot sustain a substantive due process challenge to section 9600.3(d)(2).

Because plaintiff's procedural and substantive due process challenges to section 9600.3(d)(2) are legally insufficient, defendants' motion to dismiss claim three is granted. *Compare Sanitation & Recycling Indus.,* 107 F.3d 985 (rejecting constitutional challenge to municipal law governing refuse removal which, among other things, allowed the city to revoke refuse removal license based on licensee's "association" with convicted criminals or members of organized crime groups).[17]

### C. Constitutional Claims Against OTB and DOI

Similar to plaintiff's constitutional challenge to section 9600.3(d)(2), plaintiff's constitutional claims against OTB and DOI, while not specifically addressed in the September 23 opinion, are effectively foreclosed by this Court's prior rulings.

#### 1. Due Process

##### a. Property Interest

Plaintiff alleges that, by virtue of their criminal investigation, OTB and DOI deprived plaintiff of its status as an SCA prequalified bidder. Complaint ¶ 167. As stated twice above and in my September 23 opinion, plaintiff has no protected property interest in its status as an SCA prequalified bidder, and therefore plaintiff cannot maintain a property-interest due process claim against OTB and DOI.

##### b. Liberty Interest

Plaintiff's liberty-interest due process claim against OTB and DOI appears to be based on the length of the agencies' criminal investigation, as well as the agencies' alleged refusal to provide JGC with the nature of the charges against it. According to plaintiff, "OTB and/or DOI have refused to provide plaintiff with any information with regard to the criminal investigation, and such investigation has been carried on in excess of one year." *Id.* ¶ 164. As a result, "plaintiff's reputation and standing within the community" were damaged. *Id.* ¶ 166. Plaintiff also alleges that the DOI "investigation is arbitrary and capricious ... and has no rational basis whatsoever and is not justified by the circumstances of plaintiff's transactions with OTB." *Id.* ¶ 165.

As set forth *supra* Part III.A.1., to adequately state a due process claim for deprivation of plaintiff's liberty interest in its good name and reputation, plaintiff must allege that the government—here OTB and DOI—publicized false and stigmatizing information with respect to plaintiff. In the instant case, there is little doubt that the OTB/DOI investigation was stigmatizing. However, plaintiff fails to allege, as it must, that either OTB or DOI disseminated false information about plaintiff to the public. At most, the Complaint alleges that OTB and/or DOI informed the SCA that DOI was conducting a criminal investigation of plaintiff.[18] Such information is merely a statement of fact and cannot give rise to a liberty-interest due process violation.

---

17. I again note that the Guidelines set forth specific procedures the SCA must follow prior to denying or revoking a contractor's prequalified status pursuant to section 9600.3(d)(2). Among other things, the SCA must (i) notify the contractor of the proposed denial/revocation and the reasons for such proposed denial/revocation; and (ii) provide the contractor with the opportunity to present evidence at a hearing before SCA officials. *See* 21 NYCCRR § 9600.5.

18. Indeed, the Complaint fails to make any allegations regarding OTB's or DOI's publication of information regarding plaintiff to the SCA or to anyone else. However, it is reasonable to infer that the SCA learned of the criminal investigation from either OTB or DOI.

With respect to plaintiff's specific allegations regarding the length of the OTB/DOI investigation and those agencies' failure to inform plaintiff of the nature of the charges against it, plaintiff fails to set forth any legal basis for recovery.[19] Under section 803(b) of the New York City Charter, the Commissioner of the DOI is "authorized and empowered to make any study or investigation which in his opinion may be in the best interests of the city, including but not limited to investigations of the affairs, functions, accounts, methods, personnel or efficiency of any agency." N.Y. City Charter § 803(b). The jurisdiction of the DOI extends to "any person or entity doing business with the city, or any person or entity who is paid or receives money from or through the city or any agency of the city." *Id.* § 803(d). Section 803 does not impose any time limitations on DOI investigations, nor does it require that the agency inform those entities under investigation of the existence or substance of such investigation. Section 803(c) does require that "[i]n the event that the matter investigated involves or may involve allegations of criminal conduct, the commissioner, upon completion of the investigation, shall ... forward a copy of his written report or statement of findings to the appropriate prosecuting attorney." *Id.* § 803(c).

■ In light of the provisions of section 803, there can be no doubt that DOI had full authority to investigate plaintiff with respect to its contract with OTB.[20] Moreover, it is difficult to imagine how any criminal investigation could be effectively conducted if the investigating agency were required to keep the subject of its investigation fully informed as to the nature and progress of that investigation. Indeed, this Court is aware of no federal statute or constitutional provision which requires law enforcement agencies to reveal information to criminal suspects prior to the filing of criminal charges.[21]

■ Similarly, with respect to the length of the OTB/DOI investigation, plaintiff cites no legal basis which would require DOI to conduct its investigation of plaintiff in less than one year. DOI's investigation of plaintiff began in October 1998, Complaint ¶ 38, and ended in late January or early February of this year when federal prosecutors brought criminal charges against plaintiff in the Eastern District of New York, *see United States v. Gil,* Indictment No. 00 Cr. 100 (E.D.N.Y.

19. After receiving defendants' motion to dismiss which primarily addressed plaintiff's failure to allege that OTB/DOI publicized false information regarding plaintiff, this Court requested that defendants submit supplemental briefing on the following issue:

Plaintiff alleges that it has been the subject of a criminal investigation for more than a year. Plaintiff further alleges that neither agency has informed plaintiff of the charges against it or of the nature of the criminal investigation. Do these allegations, which are presumed true for purposes of defendants' motion, state a claim against OTB and DOI for violation of plaintiff's constitutional rights?

3/10/00 letter from Rachel G. Skaistis, law clerk to Judge Scheindlin, to Michael Barron, attorney for defendants. Defendants submitted a supplemental memorandum on March 20, and plaintiff submitted a supplemental reply memorandum on March 27. As discussed above, neither defendants nor plaintiff identified a legal basis for recovery based upon the length and alleged secrecy of the OTB/DOI investigation.

20. Although plaintiff refers to a joint OTB/DOI investigation throughout its Complaint, I presume that the investigation was run by DOI with the assistance of OTB.

21. I also note that plaintiff's repeated claims of ignorance with respect to the subject matter of the OTB/DOI investigation are somewhat undermined by its attorney's March 30 letter to the SCA in which plaintiff's counsel requested a "Name Clearing Hearing" and stated: "At that time, I will present evidence in the form of tape-recorded conversations with OTB personnel that will establish that my client followed the billing procedures that were dictated to it by OTB." 3/30/99 letter from Litwack to SCA, Ex. 12 to Gil Aff; *see also* Complaint ¶ 53. The letter demonstrates that, at minimum, plaintiff was aware that the investigation concerned the accuracy of bills it submitted to OTB.

Feb. 3, 2000), Ex. A to Def. Reply Mem. There is nothing unconstitutional or even unreasonable about the approximately fifteen month time-period in which DOI conducted its investigation. Indeed, by way of comparison, the plaintiff in *S & D Maintenance* was under investigation by DOI for more than six years, at which point the state court recommended that the investigation "be brought to an expeditious conclusion." *See S & D Maintenance Co. v. City of N.Y.*, 169 A.D.2d 417, 564 N.Y.S.2d 143, 144 (1st Dep't 1991); *see also S & D Maintenance*, 844 F.2d at 969 (finding that despite more than two-year investigation by DOI, plaintiff could not prompt city to make payment prior to close of investigation as long as "delay does not exceed reasonable delay contemplated by New York law").[22]

## 2. Equal Protection

Plaintiff's equal protection claim against OTB and DOI alleges:

Upon information and belief, no other contractor that was working within the same time frame as plaintiff and that was performing services for OTB under the same circumstances has been part of a criminal investigation by either OTB and/or DOI.... Upon information and belief, plaintiff is being investigated by OTB based upon racially discriminatory reasons and/or reasons of malicious or bad faith intent to injure plaintiff.

Complaint ¶¶ 162–63. Plaintiff's allegations are insufficient to support an equal protection claim for the following reasons.

■ With respect to OTB and DOI, plaintiff asserts a "discriminatory investigation" claim, namely that OTB and DOI chose to investigate plaintiff based upon race. Under Second Circuit law, a "discriminatory investigation claim is subject

to the same test as a discriminatory prosecution claim." *St. German of Alaska Eastern Orthodox Catholic Church v. United States*, 840 F.2d 1087, 1095 (2d Cir.1988). Thus, to adequately allege a discriminatory investigation claim, a plaintiff must assert both

(1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against [plaintiff], [plaintiff] has been singled out for investigation, and (2) that the government's discriminatory selection of [plaintiff] for investigation has been invidious or in bad faith, i.e., based upon such impermissible considerations such as race, religion, or the desire to prevent [plaintiff's] exercise of constitutional rights.

*Id.* (internal quotations and brackets omitted). *See also Armstrong*, 517 U.S. at 469, 116 S.Ct. 1480 (in selective prosecution case, plaintiff must allege "that similarly situated [suspects] of other races could have been prosecuted but were not").

■ Applying this standard to the instant case, plaintiff must allege, at minimum, that OTB and DOI failed to investigate other similarly situated nonminority contractors whose billing statements to OTB raised suspicions of fraudulent conduct. Plaintiff's general assertions regarding DOI's failure to investigate other contractors working for OTB during the same time period and in the same capacity as plaintiff are inadequate to support a claim of selective investigation, because they fail to allege that those other contractors were engaged in the "type of conduct"—apparently improper billing—that prompted OTB and DOI to investigate plaintiff.

---

**22.** In addition, plaintiff provides absolutely no support for its conclusory statements that the DOI investigation was "arbitrary" and "unwarranted." Clearly, the DOI investigation uncovered sufficient evidence for the federal prosecutor to pursue criminal fraud charges against JGC. Although the question of whether those charges are meritorious remains to be determined, there is simply no basis for a due process claim against OTB and DOI based upon DOI's decision to pursue an investigation of plaintiff.

Plaintiff also fails to adequately allege the second prong of a selective investigation claim—that OTB and DOI's investigation of plaintiff was motivated by racial animus. As set forth *supra* Part III.A.2., plaintiff's conclusory statement that "plaintiff is being investigated by OTB based upon racially discriminatory reasons" cannot itself support an allegation of discriminatory intent.[23]

\* \* \*

For the foregoing reasons, and the reasons set forth in my September 23 opinion, plaintiff's constitutional allegations against all defendants and its challenge to section 9600.3(d)(2) are dismissed.

### D. State Law Claims Against All Defendants

Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a state law claim where "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Because all of plaintiff's federal claims are dismissed, I decline to exercise supplemental jurisdiction over plaintiff's state law claims and find that those claims must be dismissed as well. *See Martinez v. Simonetti,* 202 F.3d 625, 636 (2d Cir.2000) (directing dismissal of supplemental state law claims where no federal claims remained).[24]

### IV. Leave to Amend

 Under Federal Rule of Civil Procedure 15(a), "leave to amend shall be freely granted when justice so requires." Fed.R.Civ.P. 15(a). "Although the decision whether to grant leave to amend is within the discretion of the district court, refusal to grant leave must be based on a solid ground." *Oliver Schools, Inc. v. Foley,* 930 F.2d 248, 253 (2d Cir.1991). The Second Circuit has held that "futility" pro-

vides a solid ground on which to deny leave to amend. *See Marchi v. Board of Co-op. Educational Services of Albany,* 173 F.3d 469, 478 (2d Cir.), *cert. denied,* —— U.S. ——, 120 S.Ct. 169, 145 L.Ed.2d 143 (1999); *Cortec Indus., Inc.,* 949 F.2d at 48.

Plaintiff has amended its Complaint three times without success. Any additional attempts to amend the Complaint would be both futile and unfair to defendants and this Court. Accordingly, the Complaint is dismissed without leave to amend.

### V. Conclusion

For the foregoing reasons, defendants' motion to dismiss is granted in its entirety without leave to replead. The Clerk of the Court is directed to close this case.

---

**23.** I note that plaintiff fails to even allege that DOI acted with racial animus.

**24.** Because this Court declines to exercise supplemental jurisdiction over plaintiff's state law claims, it is unnecessary to reach the merits of those claims.